UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JACQUELINE BOTTEGA, Plaintiff, | : | |
| v. | : | CA 04-323ML |
| WILLIAM B. HALSTEAD, EDGAR YACHT MANAGEMENT, INC., and LOLA MARINE LTD., Defendants. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the court is Defendants Lola Marine Ltd. and William B. Halstead's Motion to Dismiss (Document ("Doc.") #22) ("Motion to Dismiss" or "Motion"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and D.R.I. Local R. 32(a). For the reasons stated herein, I recommend that the Motion to Dismiss be denied as to Lola Marine Ltd., but granted as to William B. Halstead.

**Overview**

This is an action brought pursuant to the Jones Act,[1] 46 U.S.C. App. § 688, and the court's admiralty and maritime jurisdiction, see 28 U.S.C. § 1333. Plaintiff Jacqueline Bottega ("Plaintiff") was injured on August 18, 2001, while employed as a member of the crew of the S/V LOLA. See Amended Complaint ¶¶ 19, 23. At the time the vessel was in navigable waters in the state of Maine. See 28 U.S.C. 1746 Declaration of Jacqueline Bottega

[1] "The Jones Act provides that any seaman who shall suffer personal injury in the course of employment may maintain an action for damages at law .... The statute has been interpreted to require that a Jones Act defendant be the employer of the seaman." McAleer v. Smith, 818 F.Supp. 486, 492 (D.R.I. 1993)(internal quotation marks and citations omitted)(alteration in original).

in Opposition to Defendants' Motion to Dismiss (Document #29) ("Bottega 12/15/04 Decl.") ¶ 4. She makes claims for negligence, unseaworthiness, and maintenance and cure. See Amended Complant ¶¶ 25, 30, 35.

The vessel was owned by Lola Marine Ltd. ("Lola Marine").[2] See id. ¶ 17. The identity of Plaintiff's employer on the date she was injured is a matter of dispute and more than a little confusion. Plaintiff alleged in her Amended Complaint that all three Defendants, William B. Halstead ("Halstead"), Lola Marine, and Edgar Yacht Management, employed her on August 18, 2001. See id. ¶¶ 20-22. In October of 2004, after the statute of limitations had run, Halstead and Lola Marine filed a motion which stated that from August 10, 2001, to August 20, 2001, the vessel was under a demise or bareboat[3] charter to J.W. Kaempfer

---

[2] "It has has been settled law in this country since The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, decided in 1903, that an owner of a ship is liable to indemnify seamen in his employ for injuries caused by the unseaworthiness of the vessel or its appurtenant appliances and equipment." Vitozi v. Balboa Shipping Co., 163 F.2d 286, 289 (1st Cir. 1947). "A plaintiff normally can bring an unseaworthiness claim only against the owner of a vessel." Cerqueira v. Cerqueira, 828 F.2d 863, 865 (1st Cir. 1987).

[3] Under a bareboat or demise charter the owner completely and exclusively relinquishes possession, command, and navigation to the charterer. See Brophy v. Lavigne, 801 F.2d 521, 523 (1st Cir. 1986); see also McAleer v. Smith, 57 F.3d 109, 112-113 (1st Cir. 1995); Stephenson v. Star-Kist Caribe, Inc., 598 F.2d 676, 679 (1st Cir. 1979). "It has long been recognized in the law of admiralty that for many, if not most, purposes the bareboat charterer is to be treated as the owner, generally called owner pro hac vice." Reed v. Steamship Yaka, 373 U.S. 410, 412, 83 S.Ct. 1349, 1352, 10 L.Ed.2d 448 (1963) (footnote omitted); see also Forrester v. Ocean Marine Indem. Co., 11 F.3d 1213, 1215 (5th Cir. 1993)("In a demise charter, the vessel owner transfers full possession and control to the charterer, who in turn furnishes the crew and maintenance for the vessel (thus the term 'bareboat'). Consequently, the bareboat charterer as a demise charterer is the owner pro hac vice of the vessel for the duration of the contract. The demise charterer is therefore responsible in personam for the negligence of the crew and the unseaworthiness of the vessel.").

("Kaempfer") of London, England, and that Plaintiff was in the employ of Kaempfer and not Halstead or Lola Marine on August 18, 2001, the date she was injured. See Motion for Leave to File a Memorandum of Law, Exceeding 20 Pages, in Support of Defendants Lola Marine, Ltd. and William B. Halstead's Motion to Dismiss (Doc. #20) ("Motion for Leave") at 2. Prior to receiving this motion, Plaintiff's counsel had not received any communication from Lola Marine, its insurance carrier, or its attorney regarding the existence of a bareboat charter agreement. See 28 U.S.C. 1746 Declaration of Paul B. Edelman[4] ("Edelman Decl.") ¶ 4.

By the instant Motion, Lola Marine and Halstead seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Alternatively, they move for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The basis for dismissal is the same under either rule. They contend that on the date Plaintiff was injured the vessel was under bareboat charter to Kaempfer and that Kaempfer had hired the captain and crew, including Plaintiff, for the duration of the charter. See Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defendants' Mem.") at 3. Therefore, according to Halstead and Lola Marine, Plaintiff's employer on that date was Kaempfer, see id. at 6, and the claims against them should be dismissed, see id. at 1.

Plaintiff does not concede that the vessel was under bareboat charter on August 18, 2001. See Memorandum of Law in Opposition to Defendant's [sic] Motion to Dismiss ("Plaintiff's Mem.") at 4-8. However, Plaintiff also argues that even if the

---

[4] The 28 U.S.C. 1746 Declaration of Paul B. Edelman ("Edelman Decl.") is Attachment ("Att.") 2 to the Memorandum of Law in Opposition to the Motion to Dismiss Plaintiff's Amended Complaint (Doc. #43) ("Plaintiff's Second Mem.").

vessel were under such charter Lola Marine should be estopped from denying that it was Plaintiff's employer on that date. See Memorandum of Law in Opposition to the Motion to Dismiss Plaintiff's Amended Complaint (Doc. #43) ("Plaintiff's Second Mem.") at 4-8.

Because I find that a trier of fact could conclude that Lola Marine is estopped from denying that it was Plaintiff's employer on the date she was injured, I recommend that the Motion be denied as to Lola Marine. Since Plaintiff has agreed to discontinue all claims against Halstead, I recommend that the Motion be granted as to him. See Tape of 2/22/05 hearing; see also Plaintiff's Mem. at 10[5] ("the plaintiff agrees to discontinue all claims against defendant[] Halstead individually").

**Facts and Travel**

In February 2001, Plaintiff was hired as a stewardess by Robert Edgar ("Captain Edgar"), the captain of the S/V LOLA. See Bottega 12/15/04 Decl. ¶ 1. During the time she was employed as a member of the crew, Plaintiff was paid by Defendant Edgar Yacht Management. See id. ¶ 3. Payment was made by direct deposits into Plaintiff's checking account with a New York bank. See id.; id., Exhibit ("Ex.") A (credit advices reflecting two payments of $2,500.00 and one of $3,000.00 by Edgar Yacht Management to Plaintiff). Plaintiff never received a W-2 form or 1099 form from any entity with regard to the wages she was paid during her employment on the S/V LOLA. See 28 U.S.C. 1746 Further Declaration of Jacqueline Bottega in Opposition to Defendants' Motion to Dismiss ("Bottega 3/9/05 Decl.") ¶ 2.

---

[5] Plaintiff's Memorandum of Law in Opposition to Defendant's [sic] Motion to Dismiss ("Plaintiff's Mem.") is not paginated. The court has assigned page numbers. Page 1 is the first page after the Table of Authorities.

In July 2001, Lola Marine chartered the vessel to Kaempfer for the period August 10-20, 2001. See 28 U.S.C. §1746 Declaration of William B. Halstead in Support of Defendants' Motion to Dismiss (Doc. #23) ("Halstead Decl."), Ex. A (Yacht Charter Agreement). The Yacht Charter Agreement stated that during the period of the charter the captain and crew of the vessel were employees of Kaempfer and not Lola Marine. See id. ¶ 11. Kaempfer also executed a Yacht Employment Agreement whereby he agreed to hire Captain Edgar for the charter period. See Halstead Decl., Ex. B (Yacht Employment Agreement) ¶ 1. The Yacht Employment Agreement additionally referenced the hiring of two additional crew members, but only Captain Edgar's name was written in the space provided for identifying the crew. See id. ¶ 2. The lines for identifying the "Chef" and "Mate/Stew" were left blank. See id. Although Plaintiff witnessed Captain Edgar's signature on the Yacht Employment Agreement, see id., she states that she did not read it and did not know its contents, see Bottega 12/15/04 Decl. ¶ 5.

According to Plaintiff, after she was injured on August 18, 2001, Captain Edgar told her that Lola Marine's insurance carrier, Atlantic Mutual Insurance Company ("Atlantic Mutual"), would be responsible for making payments for her maintenance and cure. See Bottega 3/9/05 Decl. ¶ 3. In apparent confirmation of this statement, shortly thereafter Atlantic Mutual began making payments to Plaintiff for her maintenance and cure. See Bottega 12/15/04 Decl. ¶ 4; id., Ex. B at 2 (reflecting maintenance payment of $1,075.00 by Atlantic Mutual on 9/25/01). Atlantic Mutual continued to make payments to Plaintiff, or for her benefit, until February of 2005. See id., Ex. B at 2; Bottega 3/9/05 Decl. ¶ 5. These payments total approximately $40,000.00. See 28 U.S.C. §1746 Statement of Mark Smieya ("Smieya 3/30/05 Statement") ¶ 8.

Lola Marine maintains that the payments by its insurer, Atlantic Mutual, were mistakenly made. See Reply Memorandum of Law of Defendants William B. Halstead and Lola Marine, Ltd. (Document #34) ("Defendants' Reply") at 6-7; id., Ex. A (28 U.S.C. §1746 Statement of Mark Smieya ("Smieya 1/20/05 Statement")) ¶¶ 6-7, 9. According to Lola Marine, Atlantic Mutual was unaware until the late summer of 2004 of the bareboat charter to Kaempfer and erroneously believed up until that time that Plaintiff was employed by Halstead. See Defendant Lola Marine Ltd.'s Brief in Response to the Questions Stated in the Court's Scheduling and Briefing Order, Dated April 20, 2005 (Docket No. 46) (Doc. #49) ("Lola Marine's Response Brief") at 2.

Further confusing matters, up until at least July 9, 2004, Atlantic Mutual (or its agents) identified Atlantic Mutual's insured as Halstead (not Lola Marine) in communications to Plaintiff, her attorneys, and other entities. See Plaintiff's Second Mem., Attachment ("Att.") 3 (Fax from Smieya to Krasin of 7/1/03); id., Att. 8 (Letter from Smieya to Varughese of 5/24/04); id., Att. 9 (Letter from Nixon to Edelman of 7/9/04); see also Bottega 12/15/04 Decl., Ex. B (six documents). However, the named insured on the policy of marine insurance pursuant to which Atlantic Mutual made payments to Plaintiff was not Halstead but Lola Marine. See 28 U.S.C. §1746 Statement of Frederick A. Lovejoy ("Lovejoy 1/21/05 Statement") ¶ 4.

According to Lola Marine and Halstead, Plaintiff was never employed by either of them. See Defendants' Mem. at 3 (citing Halstead Decl. ¶ 12). They contend that Edgar Yacht Management hired and paid the crew. See id. However, Edgar Yacht Management claims that Plaintiff was employed by Lola Marine, see Answer and Cross-Claim of Edgar Yacht Management, Inc. (Doc. #17), at 7 ("At all times material hereto, plaintiff, Jacqueline Bottega, was in the employ of Lola [Marine] as a member of the

crew of the vessel LOLA ...."), and denies that it was Plaintiff's employer for purposes of recovery under the Jones Act, see id.

On May 23, 2003, an attorney representing Plaintiff, Lawrence P. Krasin ("Attorney Krasin") of Edelman, Krasin & Jaye, P.L.L.C. ("Edelman, Krasin & Jaye"), sent a letter to Atlantic Mutual regarding Plaintiff's claim. See Edelman Decl. ¶ 1; Plaintiff's Second Mem., Att. 3 (Fax from Smieya to Krasin of 7/1/03). The claims examiner handling Plaintiff's claim, Mark Smieya ("Mr. Smieya"), responded to the letter in a fax dated July 1, 2003. Central to the court's finding regarding estoppel and determination of the instant Motion relative to Lola Marine, Mr. Smieya's fax stated in part:

> **Ms. Bottega was a Jones Act Seaman at the time of her employment with our insured.** Ms. Bottega's claim is being handled under our insured's yacht policy.
>
> We have made maintenance payments to Ms. Bottega and have paid her medical bills regarding her shoulder injury. M[s]. Bottega will be reaching maximum medical cure shortly at which time our obligation to her under the Jones Act will cease.

Plaintiff's Second Mem., Att. 3 (bold added).

At some point thereafter Atlantic Mutual closed Plaintiff's case, but agreed to reopen it on January 23, 2004, at the request of Attorney Justin Varughese ("Attorney Varughese") of Edelman, Krasin & Jaye. See Plaintiff's Second Mem., Att. 4 (Letter from Varughese to Smieya of 1/23/04) at 1. Attorney Varughese sent a letter to Mr. Smieya, confirming the agreement to reopen the claim and requesting that Mr. Smieya provide information regarding the insurance policy, including the effective dates and nature of the coverage under such agreement. See Plaintiff's Second Mem., Att. 4 at 2.

On May 24, 2004, Mr. Smieya sent a letter to Attorney

Varughese, advising that Constitution State Services had been hired by Atlantic Mutual to handle Atlantic Mutual's marine division claims, including Plaintiff's claim. Plaintiff's Second Mem., Att. 8 (Letter from Smieya to Varughese of 5/24/04). The letter noted that Atlantic Mutual had not yet received a demand letter from Plaintiff's counsel, although one had previously been requested. See id. Mr. Smieya advised that the demand letter "should also include proof of the theory of negligence being alleged against our insured and any documentation to back up Ms. Bottega's demand." Id. Mr. Smieya further stated that "we will hold our file in abeyance awaiting your demand letter." Id.

Plaintiff filed her Complaint on July 28, 2004, naming Halstead, Edgar Yacht Management, and Lola Marine as Defendants. See Complaint (Doc. #1); see also Docket. Plaintiff alleged that she was an employee of Halstead and Edgar Yacht Management on August 18, 2001. See Complaint ¶¶ 20-21. On August 4, 2004, Attorney Edelman sent a courtesy copy of the Complaint to the Walters Nixon Group, Inc. ("Walters Nixon"), which had taken over the handling of Plaintiff's claim from Constitution State Services. See Plaintiff's Second Mem., Att. 20 (Letter from Edelman to Nixon of 8/4/04); id., Att. 9 (Letter from Nixon to Edelman of 7/9/04).

On August 16, 2004, two days before the statute of limitations expired, see McKinney v. Waterman S.S. Corp., 925 F.2d 1, 2 n.2 (1st Cir. 1991)(noting three-year statute of limitations for Jones Act and general maritime law claims), Atlantic Mutual learned of the bareboat charter to Kaempfer and that Plaintiff was allegedly in the employ of Kaempfer from August 10 to August 20, 2001,[6] see Smieya 1/20/05 Statement ¶¶ 6-

---

[6] Mr Smieya states that Atlantic Mutual did not learn of the bareboat charter "until August 2004," Smieya 1/20/05 Statement ¶ 6, and "[t]hat upon learning the fact that Jacqueline Bottega was in the

7. Atlantic Mutual did not notify Plaintiff or her counsel of this information, see Tape of 2/22/05 hearing, and Plaintiff's counsel did not learn of it until on or about October 14, 2004, when they received a copy of the Motion for Leave (Doc. #20), see Edelman Decl. ¶ 4; see also Motion for Leave at 2 (stating such information).

On August 17, 2004, the day prior to expiration of the statute of limitations, Halstead's and Lola Marine's attorney, Frederick A. Lovejoy ("Attorney Lovejoy"), requested from Plaintiff's attorneys a pro forma thirty day extension of time within which to answer, move, or otherwise respond to Plaintiff's Complaint. See 28 U.S.C. §1746 Statement of Frederick A. Lovejoy ("Lovejoy 3/30/05 Statement") ¶ 5. At the time Attorney Lovejoy made this request, he was unaware that Plaintiff's counsel had filed an Amended Complaint on August 17, 2004, thus extending the time Defendants had to answer. See id. ¶ 6. A stipulation was subsequently filed which allowed Defendants Halstead and Lola Marine an additional thirty days, up to and including September 16, 2004, to respond to the Complaint. See Stipulation for Extension of Time within which to Respond to the Complaint (Doc. #9).

On September 15, 2004, Attorney Lovejoy sought an additional extension of time to and including October 5, 2004, in which Defendants Halstead and Lola Marine could answer, move, or otherwise respond to Plaintiff's Complaint. See Lovejoy 3/30/05 Statement ¶ 8; Defendants William B. Halstead and Lola Marine, Ltd.'s Motion on Consent for an Extension of Time to and

---

employ of charterer J.W. Kaemp[f]er from August 10 to August 20, 2001, Ms. Christine E. Butler of Marsh advised me via e-mail on August 16, 2004, that she was notifying Royal & Sun Alliance Insurance Company, the charterer's protection and indemnity underwriter of Ms. Bottega's claim," id. ¶ 7. Mr. Smieya does not further identify "Marsh" in either this, see id., or his subsequent statement, see 28 U.S.C. §1746 Statement of Mark Smieya ("Smieya 3/30/05 Statement") ¶ 4.

Including October 5, 2004[,] in which to Answer, Move or Otherwise Respond to the Plaintiff's Complaint (Doc. #14). Thereafter, on October 4, 2004, Attorney Lovejoy requested another extension of time to and including October 19, 2004. See Defendants William B. Halstead and Lola Marine, Ltd.'s Motion on Consent for a Second Extension of Time from October 5, 2004[,] to and including October 19, 2004[,] in which to Answer, Move or Otherwise Respond to the Plaintiff's Complaint (Doc. #18).[7]

In a declaration filed in connection with the instant Motion, Attorney Lovejoy does not indicate exactly when he learned that the S/V LOLA was under bareboat charter on August 18, 2001. See Lovejoy 3/30/05 Statement ¶¶ 9-11. He states that he was assigned the matter on August 17, 2004, see id.; that he received the file from Constitution State Services on August 19, 2004, see id.; that after receiving the second extension (up to and including October 5, 2004), see id. ¶ 8, he "conducted an investigation into the allegation that the S/V LOLA was on a J.W. Kaempfer bareboat charter on August 18, 2001," id. ¶ 9; and that he obtained a copy of the bareboat charter and the Yacht Employment Agreement on September 30, 2004, see id. ¶ 11. How Attorney Lovejoy learned of this "allegation" or from what source is not addressed in his declaration. See Lovejoy 3/30/05 Statement. He affirms, however, that he "did not attempt to purposely deprive plaintiff Jacqueline Bottega of any claim ...." Id. ¶ 18.

Defendants Halstead and Lola Marine filed the instant Motion to Dismiss on October 22, 2004. See Motion; see also Docket. On

[7] While this was the second extension sought via a motion on consent, counting the August 17, 2004, Stipulation (Doc. #9), it was the third extension of the time for Halstead and Lola Marine to answer, move or otherwise respond to the action.

December 20, 2004, Plaintiff's objection was filed.[8] See Objection to Motion to Dismiss (Doc. #28) ("Objection"). Thereafter, Halstead and Lola Marine sought and were granted two extensions of time within which to file a reply memorandum. See Docs. #30, 31, 32, 33.[9] The reply memorandum was filed on January 26, 2005. See Defendants' Reply. That same date Plaintiff filed a partial opposition to Defendants' second request for extension. See Partial Opposition to Motion on Consent (Doc. #35) ("Plaintiff's Partial Opposition"). By the opposition, Plaintiff sought leave to file a sur-reply memorandum if the court considered certain new arguments or evidence which Plaintiff believed Defendants intended to include in their reply. See id. ¶ 4. Plaintiff's Partial Opposition was referred to this Magistrate Judge for determination. See Docket entry for 2/11/05.

On February 22, 2005, the court conducted a hearing on the Motion to Dismiss and on Plaintiff's Partial Opposition. See Docket. During the hearing, Plaintiff's counsel agreed to the dismissal of all claims against Halstead. See Tape of 2/22/05 hearing; see also Plaintiff's Mem. at 10 (stating that Plaintiff "agrees to discontinue all claims against defendant[] Halstead individually").

---

[8] In the interest of brevity, hereafter the court does not recount all the extensions which were requested by the parties in connection with the instant Motion.

[9] The motions seeking these extensions have prolix titles. See, e.g., Motion on Consent for: 1) an Extension of Time to and Including February 1, 2005[,] in which to File a Reply to Jacqueline Bottega's Opposition to Defendants' Motion to Dismiss, Dated December 17, 2004, to Defendants William B. Halstead and Lola Marine, Ltd.'s Motion to Dismiss, and 2) to File a Reply Brief in Excess of the Five (5) Page Limit Contained in General Order #2002-01 No.2 (Doc. #32) ("Defendants' 1/20/05 Motion on Consent"). Consequently, the court identifies these motions in the text by document numbers and not by title.

Plaintiff's counsel argued that Lola Marine had failed to establish that the S/V LOLA was under a demise or bareboat charter on the date of Plaintiff's injury. See Tape of 2/22/05 hearing; see also Plaintiff's Mem. at 4-8. Plaintiff's counsel also contended that Lola Marine's insurer, Atlantic Mutual, had affirmatively represented in writing to him that it was Plaintiff's Jones Act employer and that Lola Marine had not informed him of the existence of the bareboat charter until after the statute of limitations had run. See Tape of 2/22/05 hearing. Because of this, Plaintiff's counsel argued that Lola Marine should be estopped from denying that it was Plaintiff's employer on August 18, 2001, and requested permission to file a memorandum addressing the estoppel issue. See id. Lola Marine's counsel opposed this request, noting that Plaintiff could have raised estoppel in its original response to the Motion. See id.

The court took both motions under advisement and indicated that it would rule shortly on Plaintiff's Partial Opposition, either granting or denying Plaintiff's request to file a sur-reply memorandum. See id. The following day, February 23, 2005, the court issued an order, granting Plaintiff's request that she be allowed to file a memorandum regarding estoppel and allowing Lola Marine thereafter to file a response. See Order Granting in Part Plaintiff's Partial Opposition to Motion on Consent (Doc. #38) ("Order of 2/23/05"). In the Order of 2/23/05, the court recounted the facts (all of which have been stated in this Report and Recommendation) which caused it to grant Plaintiff's request. See Order of 2/23/05 at 1-3. The court found that those facts were sufficient to raise the issue of estoppel in this action. See id. at 3-4 (citing Garcia v. Peter Carlton Enters., 717 F.Supp. 1321, 1326 (N.D. Ill. 1989)("Estoppel principles ordinarily apply in cases in which a defendant knowingly allows or actually misleads a plaintiff into thinking it has sued the

proper entity and the defendant appears ready to defend itself, but after the statute of limitations runs the defendant suddenly claims it is not the party to be sued."); Conradi v. Boone, 316 F.Supp. 918, 921 (S.D. Iowa 1970)(finding that plaintiffs' claim of equitable estoppel presented genuine issues as to certain material facts and that a trier of fact could conclude that defendants were estopped from asserting the bar of the statute of limitations based on conduct of one of defendants' insurers)).

On March 16, 2005, Plaintiff filed her memorandum regarding estoppel. See Plaintiff's Second Mem. (Doc. #43). Lola Marine filed its reply memorandum on April 1, 2005. See Defendant's Reply Memorandum in Support of Motion to Dismiss (Doc. #44) ("Lola Marine's Reply"). After receiving these memoranda, the court issued a Scheduling and Briefing Order (Doc. #46), setting May 11, 2005, as the date for a hearing on the question of whether Lola Marine "should be estopped from asserting any defense that it was not Plaintiff's employer." Scheduling and Briefing Order at 1. The court also directed Lola Marine and Plaintiff to address certain questions which were posed in the order. See id. at 1-3.

Lola Marine sought and was granted a continuance of the May 11, 2005, hearing, which was rescheduled for June 8, 2005. See Motion on Consent for Rescheduling of the Hearing Presently Scheduled for May 11, 2005[,] at 2:00 P.M. (Doc. #47); Order Granting Motion to Reschedule Hearing (Doc. #48). On May 9, 2005, Lola Marine filed its response to the questions posed in the Scheduling and Briefing Order of April 20, 2005. See Lola Marine's Response Brief (Doc. #49). Plaintiff's response to these questions was filed on May 19, 2005. See Plaintiff's Memorandum in Response to the Questions Put Forth by the Court in the Briefing and Scheduling Order of April 20, 2005 (Doc. #50).

On June 8, 2005, the court conducted a further hearing on

the Motion and heard arguments regarding estoppel. See Tape of 6/8/05 hearing. Thereafter, the court took the Motion under advisement.

**Standard of Review**

The Motion seeks dismissal pursuant to Rule 12(b)(1) and, alternatively, Rule 12(b)(6). A trial court may consider extrinsic materials in passing upon a motion to dismiss pursuant to Rule 12(b)(1) without converting it into a motion for summary judgment. See Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000); see also Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002)("While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion.").

When matters outside the pleadings are considered by the court in passing upon a motion to dismiss pursuant to Rule 12(b)(6), the motion is to be treated as one for summary judgment. See Fed. R. Civ. P. 12(b). Although the court did not expressly state that to the extent the Motion seeks dismissal pursuant to Rule 12(b)(6) it would be treated as a motion for summary judgment, Lola Marine has suffered no prejudice because the summary judgment standard is more favorable to Lola Marine than the Rule 12(b)(6) standard. See Burrell v. Hampshire County, 307 F.3d 1, 9 (1st Cir. 2002)(noting the more lenient standard for dismissal of claims under Rule 12(b)(6) in comparison to summary judgment). Furthermore, Lola Marine received copies of the materials outside of the pleadings, it has had the opportunity to respond to them, and it has not controverted the accuracy of the documents from its insurer[10]

---

[10] Those documents are: the July 1, 2003, fax from Mr. Smieya to Attorney Krasin, the May 24, 2004, letter from Mr. Smieya to Attorney Varughese, and the July 9, 2004, letter from Ms. Nixon to Attorney

which give rise to Plaintiff's claim of estoppel. Cf. Maldonado v. Dominguez, 137 F.3d 1, 5-6 (1st Cir. 1998)(stating the "Moody exception" to the rule that the district court must notify parties of an intent to convert a 12(b)(6) motion to a motion for summary judgment: "when a district court fails to give express notice to the parties of its intention to convert a 12(b)(6) motion into a motion for summary judgment, there is no reversible error if the party opposing the motion (1) has received materials outside the pleadings, (2) has had an opportunity to respond to them, and (3) has not controverted their accuracy.")(citing Moody v. Town of Weymouth, 805 F.2d 30, 31 (1st Cir. 1986)). Accordingly, the court applies the standard for summary judgment.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kearney v. Town of Wareham, 316 F.3d 18, 21 (1st Cir. 2002)(quoting Fed. R. Civ. P. 56(c)). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law.'" Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodriguez v.

---

Edelman.

Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." Gannon v. Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991)(citation and internal quotation marks omitted).

**Determinative Issue**

Lola Marine contends that the S/V LOLA was under bareboat charter at the time of Plaintiff's injury and that the charterer, Kaempfer, employed the crew, including Plaintiff, and assumed all of the owner's obligations for negligence under the Jones Act and for maintenance and cure and for unseaworthiness under the general maritime law. See Defendants' Mem. at 4-9. Consequently, according to Lola Marine, no factual predicate exists to support subject matter jurisdiction over any of Plaintiff's claims, and they should be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(1). See id. at 10-13. Alternatively, Lola Marine seeks dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See id. at 13-15.

For the purpose of deciding the instant Motion, the court finds it unnecessary to determine whether the vessel was under bareboat charter on the date Plaintiff was injured and whether the charterer assumed all of the obligations of Lola Marine for negligence under the Jones Act, and for maintenance and cure and

for unseaworthiness under the general maritime law.[11] This is because a trier of fact could conclude from the evidence in the record that Lola Marine is estopped from denying that it was Plaintiff's employer under the Jones Act and under general maritime law. Cf. Schrader v. Royal Caribbean Cruise Line, Inc., 952 F.2d 1008, 1014 (8th Cir. 1991)(reversing grant of summary judgment and finding that the estoppel issue presented a triable question of fact where reasonable persons could differ as to whether defendant corporation actually misled plaintiff and as to whether plaintiff was sufficiently diligent to deserve the benefit of equitable estoppel); Conradi v. Boone, 316 F.Supp. 918, 921 (S.D. Iowa 1970)(denying motion for summary judgment where court found that plaintiff's claims of estoppel presented genuine issues as to certain material facts and that a trier of fact could conclude that defendants were estopped from asserting statute of limitations bar). The reasons the court reaches this conclusion are explained below.

**Equitable Estoppel**

> Equitable estoppel is a judicially-devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or a defense, regardless of its substantive validity. Courts invoke the doctrine when "one person makes a definite misrepresentation of fact to another

---

[11] Although the court has concluded that it need not determine whether the S/V LOLA was under bareboat charter on the date Plaintiff was injured and whether as a result of that charter Plaintiff was on that date an employee of Kaempfer, the court observes that the two documents which Lola Marine cites as proof of the charter and of Plaintiff's status as an employee of Kaempfer, the Yacht Charter Agreement and the Yacht Employment Agreement, do not identify Plaintiff as part of the crew. In fact, Plaintiff's name is conspicuously absent from the Yacht Charter Agreement which states that "the crew shall comprise of the following: Captain: Robert Edgar Chef: ____________________ Mate/ Stew: ____________________." Yacht Employment Agreement ¶ 2.

> person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it" acts to his or her detriment. Restatement (Second) of Torts § 894(1) (1977).
>
> > Thus, the party claiming the estoppel must have relied on its adversary's conduct "in such a manner as to change his position for the worse," and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading. See Wilber National Bank v. United States, 294 U.S. 120, 124-125, 55 S.Ct. 362, 364, 79 L.Ed. 798 (1935).
>
> Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 59, 104 S.Ct. 2218, 2223-24, 81 L.Ed.2d 42 (1984).

Phelps v. Fed. Emergency Mgmt. Agency, 785 F.2d 13, 16 (1st Cir. 1986); see also Falcone v. Pierce, 864 F.2d 226, 228 (1st Cir. 1988)("The traditional elements of equitable estoppel are first, a material misrepresentation of a party who had reason to know of its falsity; second, reasonable reliance upon the misrepre-sentation; and third, some disadvantage to the party seeking to assert estoppel fairly traceable to the misrepresentation."); Oxford Shipping Co. v. New Hampshire Trading Corp., 697 F.2d 1, 4 (1st Cir. 1982)("Traditionally, the doctrine of equitable estoppel operates to preclude a party [who has made representations of fact through his words or conduct] '[f]rom asserting rights which might perhaps have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquired some corresponding right ....'")(quoting Precious Metals Assocs., Inc. v. Commodity Futures Trading Comm'n, 620 F.2d 900, 908 (1st Cir.1980)(quoting 2 J. Pomeroy, Equity Jurisprudence § 804, at 1421-22 (3d ed.

1905)))(alterations in original).

"It is not necessary that the representations and conduct should be labelled [sic] as fraudulent in a strict legal sense or that they were made or carried on with an intention to mislead the plaintiff." Bergeron v. Mansour, 152 F.2d. 27, 30 (1st Cir. 1945); accord Clauson v. Smith, 823 F.2d 660, 663 n.3 (1st Cir. 1987)("For an estoppel to arise, 'it is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by [his] conduct to induce delay.'")(quoting Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067, 1071 (7th Cir.1978))(alteration in original). A person "may be 'estopped from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon the representations made.'" Clauson v. Smith, 823 at 662 (quoting Bergeron, 152 F.2d at 30).

> By their very character, claims of estoppel tend to be case-specific. The nature of the representations and of the conduct of the defendant are of crucial significance in determining whether the plaintiff is to be allowed to invoke this equitable principle .... Some definite, unequivocal behavior must be shown--conduct fairly calculated to mask the truth or to lull an unsuspecting person into a false sense of security. Equally, it must be demonstrated that the party seeking to enforce an estoppel relied to his detriment on the interdicted behavior.

Clauson v. Smith, 823 F.2d 660, 663 (1st Cir. 1987).

**Application of Law to Facts**

A trier of fact could find that the elements required for traditional estoppel are present in this case. Plaintiff claims that Mr. Smieya told her that she was employed by Atlantic Mutual's insured. See Bottega 3/9/05 Decl. ¶ 4. Since Atlantic Mutual's insured was Lola Marine, see Lovejoy 1/21/05 Statement ¶ 4, Mr. Smieya's statement, if made, constituted a definite

misrepresentation of fact. It is undisputed that Mr. Smieya made the same statement in his July 1, 2003, fax to Attorney Krasin. See Plaintiff's Second Mem., Att. 3 ("Ms. Bottega was a Jones Act Seaman at the time of her employment with our insured."). Additionally, Attorney Edelman claims that Mr. Smieya and Nancy Nixon made the same or similar statements during conversations which they had with him regarding settlement of Plaintiff's claims.[12] See Edelman Decl. ¶ 2 ("I was told, by the insurance carrier's representatives, that defendant, Lola Marine Ltd., was Ms. Bottega's Jones Act employer with regard to the injuries she sustained on August 18, 2001 ...."); id. ¶ 3 ("As late as July 9, 2004[,] I spoke with Nancy Nixon with regard to this claim. At that time Ms. Nixon acknowledged that the insured was Ms. Bottega's Jones Act employer ....").

A trier of fact could find that Lola Marine's insurer, Atlantic Mutual, had at least three reasons to believe that Plaintiff would rely upon the statements that she was employed by its insured. First, the alleged oral statements were made by Atlantic Mutual's agents, Mr. Smieya and Ms. Nancy Nixon of Walters Nixon, to Plaintiff or Plaintiff's counsel. See Bottega 3/9/05 Dec. ¶ 4; Edelman Decl. ¶¶ 2-3. Second, the written statements, see Plaintiff's Second Mem., Att. 3, 8, 9, which are apparently undisputed, were sent to Plaintiff's counsel. Third,

[12] Mr. Smieya disputes that he told Attorney Edelman that Lola Marine was Plaintiff's Jones Act employer with regard to the injuries she sustained on August 18, 2001. See 28 U.S.C. §1746 Statement of Mark Smieya ("Smieya 3/30/05 Decl.") ¶ 5 ("That I at no time told Jacqueline Bottega or her attorneys that Jacqueline Bottega was employed by Lola Marine, Ltd."). The Smieya 3/30/05 Decl. is attached as an exhibit to Lola Marine's Reply (Doc. #44). No affidavit has been submitted from Ms. Nixon, disputing the statements attributed to her regarding the identity of Plaintiff's employer. In any case, the fact that Lola Marine appears to dispute the oral statement attributed to Mr. Smieya does not prevent the court from considering it for purposes of deciding the instant Motion.

Atlantic Mutual made payments to Plaintiff from September 2001 to at least October 2004[13] in apparent conformity with (and seeming confirmation of) these oral and written statements. See Bottega 3/9/05 Decl. ¶ 5; see also Bottega 12/15/04 Decl., Ex. B at 2; cf. Dillon v. Admiral Cruises, Inc., 960 F.2d 743, 745-746 (8th Cir. 1992)(finding that, where defendant had voluntarily paid plaintiff's medical bills, reasonable persons could differ as to whether defendant misled plaintiff regarding her legal situation such that defendant would should be estopped from asserting time limitation to bar suit).

Plaintiff's reliance upon these statements could be found reasonable by a trier of fact for the same reasons. In addition, the following circumstances weigh in favor of a finding of reasonableness.

Plaintiff alleges that she was hired as a stewardess, see Bottega 3/9/05 Decl. ¶ 1, a position which would not require familiarity with the legal ramifications of a bareboat charter. Plaintiff has affirmed that she neither read nor knew the contents of the Yacht Employment Agreement which she witnessed. See Bottega 12/15/04 Decl. ¶ 5. Plaintiff has declared that she was not aware of what it meant for a vessel to be under a bareboat charter, that Captain Edgar never advised her that during the time of the charter she was an employee of Kaempfer, that she never entered into an employment agreement with Kaempfer, that Kaempfer never informed her that he was her employer during the course of the charter, that she never consented to be employed by Kaempfer, that she never received any salary from Kaempfer, and that she never received a W-2 Form or a

[13] The court uses "October 2004" here (as opposed to February 2005) because after October Plaintiff was on notice that Lola Marine disputed that it was her Jones Act employer.

1099 Form reflecting wages paid to her by Kaempfer. See Bottega 3/9/05 Decl. ¶ 2.

Following her injury, Plaintiff was allegedly advised by Captain Edgar that Lola Marine's insurance carrier, Atlantic Mutual, would be responsible for making payments for her maintenance and cure. See id. ¶ 3. On January 23, 2004, her attorneys requested a copy of Atlantic Mutual's file associated with Plaintiff's claim and information about the insurance policy pursuant to which payments were being made. See Plaintiff's Second Mem., Att. 4. Despite this request, Plaintiff's attorneys never received any communication or correspondence from Lola Marine, its insurance carrier, or its attorney regarding the existence of a bareboat charter prior to receiving Halstead's and Lola Marine's motion to file a brief in excess of twenty pages on or about October 14, 2004. See Edelman Decl. ¶ 4. Plaintiff has declared that she did not know until October 15, 2004, when her attorney was notified of the bareboard charter, that Lola Marine disputed that it was Plaintiff's employer on August 18, 2001. See Bottega 3/9/05 Decl. ¶ 6; Edelman Decl. ¶ 4.

Although Plaintiff was hired by Captain Edgar and received payments from Edgar Yacht Management, see Bottega 12/15/04 Decl., Ex. A (credit advices reflecting two payments of $2,500.00 and one of $3,000.00 to Plaintiff), the significance of these facts are substantially diminished by the statements which were allegedly made to Plaintiff after her injury by Captain Edgar and by the representatives of Atlantic Mutual. It is also diminished by the failure of Edgar Yacht Management to provide Plaintiff with a W-2 or 1099 form. Thus, in light of all of the above described circumstances, a reasonable finder of fact could conclude that Plaintiff did not know, nor should she have known, that Atlantic Mutual's statements that she was employed by its

insured, Lola Marine, were misleading.

Turning to the final element required for traditional estoppel, a trier of fact could also find that Plaintiff acted to her detriment by relying upon Atlantic Mutual's statement that she was employed by its insured, Lola Marine. By the time her counsel was informed by Lola Marine's counsel that the S/V LOLA was under a demise charter to Kaempfer and that Kaempfer was her employer on the date she was injured, the statute of limitations had expired. See Motion for Leave (Doc. #20); Bottega 3/9/05 Decl. ¶ 6.

**Lola Marine's Arguments**

Lola Marine makes four arguments in opposition to Plaintiff's contention that it should be equitably estopped from denying that it was Plaintiff's employer on August 18, 2001. See Lola Marine's Reply at 1-10. First, Lola Marine correctly notes that equitable estoppel is "extraordinary relief" which will not be applied unless the equities are clearly balanced in favor of the party seeking relief, see id. at 2 (quoting Southex Exhibitions, Inc. v. Rhode Island Builders Assoc., 279 F.3d 94, 104 (1st Cir. 2002)), and that the party relying upon estoppel has the burden of proving it, see id. (citing Rivera-Gomez v. de Castro, 900 F.2d 1, 3 (1st Cir. 1990)). Lola Marine asserts that Plaintiff "is 'several bricks short of the required load ....'" Lola Marine's Reply at 2 (quoting Rivera-Gomez v. de Castro, 900 F.2d at 3). However, all that Plaintiff must do at this juncture is demonstrate that a trier of fact could reasonably find that Lola Marine should be estopped from denying that it was Plaintiff's Jones Act employer on August 18, 2001. Plaintiff has made this showing.

In the course of this initial argument, Lola Marine cites an unpublished First Circuit opinion for the proposition that "the

party to be estopped must have had an 'improper purpose' or 'constructive knowledge that its conduct was deceptive' [Romero-Villanueva v. Puerto Rico Elec. Power Auth., 112 Fed Appx. 74,] 78 [2004 U.S. App. LEXIS 21350 (1st Cir. Oct. 14, 2004)]." Even if the court were to overlook the fact that this opinion is unpublished[14] and that the proposition urged by Lola Marine appears to be at odds with language in Clauson v. Smith, 823 F.2d 660, 663 n.3 (1st Cir. 1987)("For an estoppel to arise, it is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by [h]is conduct to induce delay.") (alteration in original)(internal quotation marks omitted), and Bergeron v. Mansour, 152 F.2d 27, 30 (1st Cir. 1945)("It is not necessary that the representations and conduct ... be ... made or carried on with an intention to mislead the plaintiff."), a reasonable trier of fact could find that Lola Marine had constructive knowledge that the statements and conduct of its

[14] Rule 32.3 of the Local Rules of the United States Court of Appeals for the First Circuit provides in part:

> Rule 32.3. Citation of Unpublished Opinions
>
> (a) An unpublished opinion of this court may be cited in this court only in the following circumstances:
>
> (1) When the earlier opinion is relevant to establish a fact about the case before the court ....
>
> (2) Other circumstances. Citation of an unpublished opinion of this court is disfavored. Such an opinion may be cited only if (1) the party believes that the opinion persuasively addresses a material issue in the appeal; and (2) there is no published opinion from this court that adequately addresses the issue. **The court will consider such opinions for their persuasive value but not as binding precedent.**
> ....

1st Cir. R. 32.3 (bold added).

agent and insurer, Atlantic Mutual, relative to Plaintiff and her attorneys, were deceptive. Although Lola Marine suggests that Atlantic Mutual did not "deceitfully misguide [P]laintiff," Lola Marine's Reply at 2 (citing Rivera-Gomez v. de Castro, 900 F.2d 1, 3 (1st Cir. 1990)), because it was "never aware of the entire [panoply of relevant] facts until the statute of limitations expired; i.e., it was not able to procure a copy of the bareboat charter with J.W. Kaempfer until September 30, 2004," Lola Marine's Reply at 2 (quoting Rivera-Gomez v. Castro, 900 F.2d at 3)(alteration in original)(internal quotation marks omitted), Lola Marine's focus is misdirected. The party Plaintiff is seeking to estop is Lola Marine, not Atlantic Mutual. It is Lola Marine's knowledge which counts in determining whether the conduct of its agent and insurer, Atlantic Mutual, was deceptive. Lola Marine was fully aware of the existence of the charter since at least July 19, 2001, when Halstead executed the charter on behalf of Lola Marine. See Halstead Decl., Ex. A (Yacht Charter Agreement). Thus, Lola Marine was fully aware of the entire panoply of relevant facts surrounding the charter during the entire time the statute of limitations was running.

Moreover, even if the court were to focus only on the knowledge of Atlantic Mutual, Atlantic Mutual learned of the charter at least two days prior to the expiration of the statute of limitations, but took no action to notify either Plaintiff or her attorneys of this critical information. "Silence ... can be the basis for estoppel where there exists a duty not to remain silent as where the circumstances require one to speak lest such silence would reasonably mislead another to rely thereon to his detriment." Southex Exhibitions, Inc. V. Rhode Island Builders Assoc., 279 F.3d 94, 104 (1st Cir. 2002)(quoting Schiavulli v. Sch. Comm. Of Town of N. Providence, 114 R.I. 443, 334 A.2d 416,

419 (R.I. 1975)).

Lola Marine's second argument is that equitable estoppel does not apply to statements or admissions of legal conclusions. See Lola Marine's Reply at 3. Lola Marine asserts that "[t]he gravamen of plaintiff's estoppel claim is that her attorneys were told she was a Jones Act employee of Lola Marine," Lola Marine's Reply at 3, and that "this ... is merely a conclusion of law," id., and as such cannot be the basis for an estoppel, see id. (citing, inter alia, Mississippi Power & Light Co. v. Pitts, 181 Miss. 344, 358-59 (Miss. 1938), 28 Am.Jur.2d, Estoppel and Waiver, §52 at 663-64, and Chicago, R.I. & P. Ry. Co. v. Sawyer, 176 Okl. 446 (Okl. 1936)). The short answer to this argument is that Plaintiff seeks to have Lola Marine estopped from denying that it was Plaintiff's employer on August 18, 2005. Whether Lola Marine employed Plaintiff is a question of fact.

Lola Marine asserts in a footnote that "[a]t no time did the underwriter [Atlantic Mutual], either in writing or verbally, ever tell plaintiff Jacqueline Bottega or her attorneys that defendant Lola Marine, Ltd. was Jacqueline Bottega's employer." See Lola Marine's Reply at 3 n.1 (citing Smieya 3/30/05 Decl.). However, this contention is directly disputed by Attorney Edelman, see Edelman Decl. ¶ 2, and at least implicitly disputed by Plaintiff, see Bottega 3/9/05 Decl. ¶¶ 4, 6. Additionally, Mr. Smieya stated in his July 1, 2001, fax to Attorney Krasin that "Ms. Bottega was a Jones Act Seaman at the time of her employment with our insured." Plaintiff's Second Mem., Att. 3. It has been stipulated that Lola Marine was the named insured on this insurance policy. See Defendants' Reply, Ex. B ("Lovejoy 1/21/05 Statement") ¶ 4 ("I agreed to stipulate ... that Lola Marine, Ltd. was the named insured on a marine insurance policy issued by Atlantic Mutual Insurance Company ...."). Given this

stipulation and the statement in Mr. Smieya's July 1, 2001, fax, Lola Marine puts too fine a point on it in claiming that Atlantic Mutual did not tell Plaintiff that Lola Marine was her employer.

The third argument advanced by Lola Marine is that Plaintiff had knowledge or the means of knowledge concerning her employment and cannot be heard to claim estoppel due to her lack of proper diligence. See Lola Marine's Reply at 4 (citing Falcone v. Pierce, 864 F.2d 226, 231 (1st Cir. 1988)("If, at the time when he acted[,] [the party claiming the benefit of the estoppel] had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment.")(quoting 3 J. Pomeroy, Equity Jurisprudence § 810, at 219))(alteration in original). Lola Marine asserts that:

> plaintiff had the same means of knowledge as did defendants as to the status of her employment. Indeed, she acted as witness to the bareboat charter and one page Yacht employment agreement. Simply put, she should not now be heard, at the "eleventh hour," to claim lack of knowledge of a one-page document, which was clearly labeled, placed under her very nose.

Lola Marine's Reply at 5.

The court disagrees with the assertion that Plaintiff had the same knowledge as Lola Marine. Plaintiff was not given copies of the charter and employment agreements, whereas Lola Marine, as a party executing these documents, presumably received copies or originals. Moreover, the basis for Lola Marine's contention that Plaintiff "acted as witness to the bareboat charter," Lola Marine's Reply at 5, is not clear to the court. The Yacht Charter Agreement does not reflect that Plaintiff witnessed it. See Yacht Charter Agreement. To the contrary, it

reflects that it was witnessed by Captain Edgar and a person other than Plaintiff. See id. at 5; see also Yacht Employment Agreement. Even if Plaintiff had witnessed it, the Yacht Charter Agreement is a five page document, containing single spaced paragraphs of rather small print. See Yacht Charter Agreement. It is not reasonable to believe that a person acting as a mere witness to the execution of such a multipage document would have any significant knowledge of its contents.

While the Yacht Employment Agreement consists of one page, it also has multiple paragraphs, and the print, although larger than that on the Yacht Charter Agreement, is still relatively small. See Yacht Employment Agreement. It is similarly unreasonable to believe that a person being asked to witness the execution of this document would read its contents. Also, as previously noted, although the name of Captain Edgar was entered on the Yacht Employment Agreement, Plaintiff's name was not.[15] Thus, even if Plaintiff read the form, it would not have necessarily informed her that she was part of the crew being employed pursuant to it. Indeed, the opposite conclusion seems more reasonable.

The court also has already determined, see discussion supra at 21-23, that a reasonable finder of fact could conclude that Plaintiff should not have known that Atlantic Mutual's statement that she was employed by its insured was misleading. Thus, the court rejects Lola Marine's third argument that Plaintiff cannot be heard to claim estoppel because of her alleged lack of proper diligence.

Lola Marine's fourth argument is that "no issue of fact prevents this court from granting Defendants' Motion to Dismiss." Lola Marine's Reply at 6. The court disagrees. The following

---

[15] See n.11.

facts, which are relevant to determining whether Lola Marine should be estopped from denying that it was Plaintiff's employer on August 18, 2001, are in dispute. Plaintiff claims that Mr. Smieya advised her that she "was a Jones Act seaman employed by their insured,"[16] Bottega 3/9/05 Decl., but Mr. Smieya denies that he told Plaintiff that she was employed by Lola Marine, see Smieya 3/30/05 Statement ¶ 10. Attorney Edelman claims that he had numerous conversations with Mr. Smieya and Ms. Nixon and that he was told by the insurance carrier's representatives (presumably referring to Mr. Smieya and Ms. Nixon) that "defendant, Lola Marine Ltd., was Ms. Bottega's Jones Act employer with regard to the injuries she sustained on August 18, 2001 ...." Edelman Decl. ¶ 2. Mr. Smieya denies making such a statement. See Smieya 3/30/05 Statement ¶ 10.

In addition, the following matters, while not in dispute, call out for further clarification. In response to a question posed by the court, see Scheduling and Briefing Order (Doc. #46) at 2-3, Lola Marine has stated that "Atlantic Mutual mistakenly made payments to [Plaintiff] because it believed, up until the time it actually was provided with a photocopy of the bareboat charter policy, that she was employed by William B. Halstead," Lola Marine's Response Brief at 2. Lola Marine does not explain what caused Atlantic Mutual to harbor the mistaken belief that Plaintiff was employed by Halstead. Did Halstead notify Atlantic Mutual of Plaintiff's claim? If so, what did he say about it and about Plaintiff's employment status? Did Halstead notify Atlantic Mutual of the bareboat charter? If yes, when? If it was not until August of 2004, what accounts for the delay?

---

[16] It has been stipulated that Lola Marine was the named insured on the policy of insurance issued by Atlantic Mutual. See Lovejoy 1/21/05 Statement ¶ 4.

Lastly, Edgar Yacht Management, which Lola Marine contends was Plaintiff's employer when the vessel was not under bareboat charter, has alleged that Plaintiff was in the employ of Lola Marine. See Answer and Cross-Claim of Edgar Yacht Management, Inc. (Doc. #17) at 7. This directly contradicts Lola Marine's contention.

Given the factual disputes and other matters warranting clarification, the court cannot find as a matter of law that no estoppel could exist here. While "'estoppel becomes a question of law appropriate for summary judgment when facts are not in dispute,'" Lola Marine's Reply at 7 (quoting Osborn v. Princess Tours, Inc., 1996 U.S. Dist. LEXIS 22436, at *11 (C.D. Cal. Feb. 5, 1996), here sufficient facts are in dispute that the issue of estoppel is not susceptible to resolution as a matter of law.

**Conclusion**

For the reasons stated above, I recommend that the Motion to Dismiss be granted as to Defendant Halstead and denied as to Lola Marine. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
July 21, 2005