UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

---------------------------------------------------------------X

JACQUELINE BOTTEGA,
Plaintiff,

v.

WILLIAM B. HALSTEAD,
EDGAR YACHT MANAGEMENT, INC., and
LOLA MARINE LTD.,
Defendants.

---------------------------------------------------------------X

CIVIL ACTION
No. 04-323ML

AMENDED THIRD-PARTY COMPLAINT

LOLA MARINE, LTD.,
Third-Party Plaintiff,

v.

J. W. KAEMPFER,

Third-Party Defendant

---------------------------------------------------------------X

Pursuant to Rule 14 (c) of the Federal Rules of Civil Procedure, defendant and third-party plaintiff, LOLA MARINE LTD. (hereafter "Lola Marine"), by its attorneys, Lovejoy & Associates, for its third-party complaint against J. W. KAEMPFER (hereafter "Kaempfer"), alleges upon information and belief as follows:

1. This is a civil case of admiralty and maritime jurisdiction within the meaning of 28 U.S.C. §1333. This is an admiralty and maritime claim within the meaning of Rules 9(h) and 14(c) of the Federal Rules of Civil Procedure.

2. That at all times hereinafter mentioned, defendant and third-party plaintiff, Lola Marine, was a domestic corporation organized under and by virtue of the laws of the

State of Rhode Island with a registered place of business at One Financial Plaza, Suite 1800, Providence, Rhode Island.

3. At all times hereafter mentioned, third-party defendant, Kaempfer, was and is a resident of the District of Columbia.

4. Plaintiff has brought an action against defendant Lola Marine, among others, to recover for personal injuries she allegedly suffered while serving as a crewmember aboard the S/V LOLA on August 18, 2001. A true and complete copy of the amended complaint, dated August 13, 2004, is attached hereto as Exhibit A.

5. On August 18, 2001, defendant Lola Marine was the registered owner of the S/V LOLA.

6. On July 6, 2001, third-party defendant, Kaempfer, as charterer, entered a Yacht Charter Agreement (hereafter "Charter Agreement"), with defendant and third-party plaintiff, Lola Marine, as owner, of the S/V LOLA. A true and complete copy of the Charter Agreement is attached hereto as Exhibit B. The Charter Agreement provided that the charter period of the S/V LOLA was to run from twelve noon on Friday, August 10, 2001 through twelve noon on Monday, August 20, 2001.

7. Pursuant to the Acknowledgement contained at the end of the Charter Agreement, third-party defendant, Kaempfer, expressly acknowledged that the charter he was entering was a "bareboat charter" and that, under the terms of the bareboat charter, he was responsible during the period of the bareboat charter, and had full and exclusive possession, command, management and operation of the vessel as if he owned it, except as to decisions relating to safe navigation which were reserved as the responsibility of the S/V LOLA's captain.

8. On July 6, 2001, third-party defendant, Kaempfer, also entered into a separate agreement entitled "Yacht Employment Agreement" (hereafter "Employment Agreement"). Kaempfer, as employer, entered the Employment Agreement with co-defendant, Robert Edgar, as captain of the S/V LOLA. Pursuant to the first "WHEREAS" clause of the Employment Agreement, third-party defendant, Kaempfer, further acknowledged that it was his responsibility to furnish the S/V LOLA with a competent master and crew during the term of the charter. A true and complete copy of the Employment Agreement is attached hereto as Exhibit C.

9. Pursuant to the foregoing Charter Agreement and/or Employment Agreement, third-party defendant, Kaempfer, took full and exclusive possession, management and control of the vessel as of twelve noon on August 10, 2001. On August 18, 2001, the date plaintiff allegedly suffered her injuries, the S/V LOLA was in the full and exclusive possession, command, management and control of the third-party defendant, Kaempfer.

10. Pursuant to the Employment Agreement, Robert Edgar and/or Jacqueline Bottega were employees of Kaempfer on August 18, 2001.

11. Pursuant to "Paragraph 2. INSURANCE" of the Charter Agreement, third-party defendant, Kaempfer, specifically agreed that the Owner's insurance policy did not cover Charterer's protection and indemnity and agreed that Charterer would purchase additional Charterer's Legal Liability Insurance at his own expense.

12. On August 18, 2001, the date plaintiff allegedly suffered her injuries, plaintiff was not employed by defendant and third-party plaintiff, Lola Marine. Lola Marine never acted as plaintiff's employer.

13. On August 18, 2001, the date plaintiff allegedly suffered her injuries, third-party defendant, Kaempfer, was the bareboat charterer of the S/V LOLA and thereby "stepped into the shoes" of the owner/defendant and third-party plaintiff, Lola Marine and became responsible for any and all injuries and damages suffered by the crew due to any unseaworthiness of the vessel, negligence of her captain/crew, and for any damages or maintenance and cure owing to crew members as a result of injuries.

AS AND FOR A FIRST CAUSE OF ACTION

14. Defendant and third-party plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 13 of this amended third-party complaint as if set forth at length herein and further alleges upon information and belief as follows:

15. Plaintiff's complaint seeks damages against defendant and third-party plaintiff, Lola Marine, of $5,000,000.00 on her first cause of action for negligence and $1,000,000.00 on her second cause of action for unseaworthiness. That if plaintiff was damaged as alleged, which defendant and third-party plaintiff, Lola Marine, denies, then such damage was caused while third-party defendant, Kaempfer, was in full and exclusive possession, management and control as bareboat charterer of the vessel and any such damage to plaintiff was caused by the negligence, fault or breach of the warranty of seaworthiness by the third-party defendant, Kaempfer, and was not due to the fault, error or omission of the defendant and third-party plaintiff, Lola Marine.

16. If plaintiff is found to be entitled to recover damages against defendant and third-party plaintiff, Lola Marine, on either or both of her negligence and/or unseaworthiness claims, then third-party defendant, Kaempfer, is liable to Lola Marine for full indemnity and/or contribution of its percentage share of fault in an amount to be

determined at trial, together with all costs, expenses and counsel fees previously incurred to date by defendant and third-party plaintiff, Lola Marine, and its agents in defending plaintiff's action, and all costs, expenses and counsel fees that may be incurred in the future defense of this action.

AS AND FOR A SECOND CAUSE OF ACTION

17. Defendant and third-party plaintiff, Lola Marine, repeats and re-alleges each and every allegation of paragraphs 1 through 16 of this amended third-party complaint as if set forth at length herein and further alleges upon information and belief as follows:

18. On August 18, 2001 and on various dates thereafter, defendant and third-party plaintiff, Lola Marine, through its underwriters, made maintenance and cure payments to plaintiff in the total amount of approximately $42,000.00. These maintenance and cure payments were made by Lola Marine's underwriters, on Lola Marine's behalf, in error and in the mistaken belief that, at the time of the alleged injury, plaintiff was a Jones Act Seaman in the employ of defendant and third-party plaintiff, Lola Marine.

19. The third cause of action of plaintiff's complaint seeks recovery against defendant and third-party plaintiff of maintenance and cure in a sum which allegedly exceeds $150,000.00 and the amount of which is to be determined at trial of this matter.

20. On August 18, 2001, third-party defendant, KAEMPFER, was (and remains) the responsible party for any maintenance and cure determined by this Court to be payable to plaintiff as a result of any negligence committed during the time the third-

party defendant possessed, operated and controlled the vessel as bareboat charterer, or as a result of any unseaworthiness that arose on the vessel during the time that he was the bareboat charterer of the S/V/ LOLA.

21. If plaintiff was damaged as alleged, and is found entitled to maintenance and cure, which defendant and third-party plaintiff, Lola Marine, denies, then such damage was caused while third-party defendant, Kaempfer, was in full and exclusive possession, management and control as bareboat charterer of the vessel and any such damage to plaintiff was caused by the negligence, fault or breach of the warranty of seaworthiness by the third-party defendant and was not due to the fault, error or omission of the defendant and third-party plaintiff. As bareboat charterer, third-party defendant, Kaempfer, is bound and obligated to indemnify defendant and third-party plaintiff, Lola Marine, for any and all sums to which plaintiff may be entitled for maintenance and cure, including amounts previously advanced to plaintiff on behalf of Lola Marine by its underwriters and for any and all sums ultimately held to be owing to plaintiff as maintenance and cure by this Court, together with all costs, expenses and counsel fees previously incurred to date by defendant and third-party plaintiff in defending plaintiff's action, and all costs, expenses and counsel fees that may be incurred in the future defense of this action.

AS AND FOR A THIRD CAUSE OF ACTION

22. Defendant and third-party plaintiff, Lola Marine, repeats and re-alleges each and every allegation of paragraphs 1 through 21 of this amended third-party complaint as if set forth at length herein and further alleges upon information and belief as follows:

23. That Robert Edgar was an employee of J.W. Kaempfer on August 18, 2001.

24. That on August 18, 2001, if plaintiff Jacqueline Bottega was injured as the result of the alleged negligence of Robert Edgar, then the Third-Party defendant; Kaempfer, is liable for plaintiff Jacqueline Bottega's damages pursuant to the doctrine of respondeat superior.

WHEREFORE, defendant and third-party plaintiff Lola Marine demands:

(A) Judgment dismissing the complaint as against it together with the costs, expenses and disbursements in this action;

(B) Judgment against third-party defendant, Kaempfer, for all sums, if any, which may be adjudged against defendant and third-party plaintiff in favor of plaintiff, together with counsel fees, costs, expenses and disbursements of this action including those previously advanced and/or passed to date and those that may be incurred in future defense of this action;

(C) If the Court finds that plaintiff is entitled to any judgment, that such judgment be had directly against third-party defendant, Kaempfer, pursuant to Rule 14(c) of the Federal Rules of Civil Procedure and that third party defendant, Kaempfer, be required to answer the plaintiff's amended complaint directly;

(D) Whether or not plaintiff prevails, judgment against third-party defendant, Kaempfer, and for all counsel fees, costs and disbursements in favor of third-party plaintiff; and

(E) For such other and further relief as the Court may deem just in the premises.

Dated: Providence, Rhode Island
January 20, 2006

LOVEJOY & ASSOCIATES
Attorneys for Defendant and
Third-Party Plaintiff
LOLA MARINE, LTD.

By: ______________________
Frederick A. Lovejoy
(Bar No. 5313)
1536 Westminster Street
Providence, Rhode Island 02909
(401) 273-7747
(401) 273-4818 Telefax

BottegaAmendedThird-PartyComplaint.doc

# Exhibit A

Justin T. Shay (#2781)
Charles S. Beal (#5559)
Cameron & Mittleman, LLP
56 Exchange Terrace
Providence, RI 02903
(401) 331-5700

COPY

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

C.A. No. 04-323ML

JAQUELINE BOTTEGA,

Plaintiff,

PLAINTIFF DEMANDS A TRIAL BY JURY

AMENDED COMPLAINT

-against-

SEAMAN'S CASE UNDER THE JONES ACT FOR PERSONAL INJURIES

WILLIAM B. HALSTEAD, EDGAR YACHT MANAGEMENT INC and LOLA MARINE LTD.,

Defendants.

SUITS UNDER SPECIAL RULE FOR SEAMEN TO SUE WITHOUT SECURITY OR PREPAYMENT OF FEES FOR THE ENFORCEMENT OF THE LAWS OF THE UNITED STATES, COMMON AND STATUTORY, FOR THE PROTECTION AND HEALTH AND SAFETY OF SEAMEN AT SEA PURSUANT TO 28 USC 1916

Plaintiff, JAQUELINE BOTTEGA, by her attorneys CAMERON & MITTLEMAN, LLP, complaining of the defendants, WILLIAM B. HALSTEAD, EDGAR YACHT MANAGEMENT INC and LOLA MARINE LTD., respectfully state and allege upon information and belief as follows:

**AS FOR THE FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF: JAQUELINE BOTTEGA**

FIRST: Plaintiff, **JAQUELINE BOTTEGA**, is a resident and citizen of the State of New York.

SECOND: Defendant, **EDGAR YACHT MANAGEMENT INC**, is a domestic corporation engaged in the operation of yachts and other assorted vessels and does business in the State of Rhode Island.

THIRD: Upon information and belief, Defendant, **WILLIAM B. HALSTEAD**, is a resident and citizen of the State of Rhode Island.

FOURTH: Defendant, **LOLA MARINE LTD.**, is a domestic corporation engaged in the operation of yachts and other assorted vessels and does business in the State of Rhode Island.

FIFTH: This action is brought under the Admiralty Law as modified by the Jones Act, 46 U.S.C. § 688, and the Court's Admiralty and Maritime Jurisdiction pursuant to 28 U.S.C. § 1333. Nothing in these jurisdictional allegations is to be construed as a waiver of the plaintiff's right to a jury trial in plaintiff's action at law under the Jones Act, nor of the right to have all of the claims asserted herein tried to a jury, at plaintiff's option

SIXTH: At all times material hereto defendant, **WILLIAM B.HALSTEAD** was the captain of the vessel known as **LOLA**.

SEVENTH: At all times material hereto defendant, **WILLIAM B. HALSTEAD**, managed and maintained the vessel **LOLA**.

EIGHTH: At all times material hereto defendant, **WILLIAM B. HALSTEAD**, operated and controlled the vessel **LOLA**.

<u>NINTH</u>: At all times material hereto defendant, **WILLIAM B. HALSTEAD,** owned the vessel **LOLA.**

<u>TENTH</u>: At all times material hereto defendant, **WILLIAM B. HALSTEAD,** hired the crew of the vessel LOLA.

<u>ELEVENTH</u>: At all times material hereto defendant, EDGAR YACHT MANAGEMENT INC, managed and maintained the vessel LOLA.

<u>TWELFTH:</u> At all times material hereto defendant, **EDGAR YACHT MANAGEMENT INC,** operated and controlled the vessel **LOLA.**

<u>THIRTEENTH</u>: At all times material hereto defendant, **EDGAR YACHT MANAGEMENT INC,** owned the vessel **LOLA.**

<u>FOURTEENTH</u>: At all times material hereto defendant, **EDGAR YACHT MANAGEMENT INC.,** hired the crew of vessel **LOLA.**

<u>FIFTEENTH</u>: At all times material hereto defendant, **LOLA MARINE LTD.,** managed and maintained the vessel LOLA.

<u>SIXTEENTH:</u> At all times material hereto defendant, **LOLA MARINE, LTD,** operated and controlled the vessel **LOLA.**

<u>SEVENTEENTH</u>: At all times material hereto defendant, **LOLA MARINE LTD,** owned the vessel **LOLA.**

<u>EIGHTEENTH</u>: At all times material hereto defendant, **LOLA MARINE LTD,** hired the crew of vessel LOLA.

<u>NINETEENTH</u>: On August 18, 2001, and at all times mentioned herein, Plaintiff was employed as a member of the crew of vessel LOLA.

TWENTIETH: On August 18, 2001, and at all times mentioned herein, Plaintiff was an employee of WILLIAM HALSTEAD.

TWENTY-FIRST: On August 18, 2001, and at all times hereinafter mentioned, Plaintiff was an employee of LOLA MARINE LTD.

TWENTY-SECOND: On August 18, 2001, Plaintiff was an employee of EDGAR YACHT MANAGEMENT INC.

TWENTY-THIRD: On August 18, 2001, while vessel LOLA, was operating in United States territorial waters, Plaintiff, JAQUELINE BOTTEGA, in the course of her employment, pursuant to orders, and while in the performance of her duties, because of the unsafe and unseaworthy condition of the vessel and the negligence of the defendants, was caused to sustain serious and permanent injuries.

TWENTY-FOURTH: Plaintiff's, JAQUELINE BOTTEGA, injuries were caused by the negligence of the defendants, by their agents, servants, workmen, and employees, by the unseaworthiness of the vessel, and by the defendants' breach of its obligation under the circumstances including its obligation to provide a safe and seaworthy vessel.

TWENTY-FIFTH: Plaintiff's injuries were sustained solely by reason of the negligence of the defendants and the defendant's agents, servants and employees and the actions of plaintiff did not contribute in any way to the injuries sustained.

TWENTY-SIXTH: At the time Plaintiff, JAQUELINE BOTTEGA, entered defendant's employ, she was a strong, robust and able-bodied person with a substantial earning capacity and prospects of advancement in earning capacity.

**TWENTY-SEVENTH:** As a consequence of the negligence of the defendants as aforesaid, the plaintiff suffered unnecessary, severe and permanent injuries as well as severe mental anguish, shock, pain, disability and reduced earning capacity.

**TWENTY-EIGHTH:** Plaintiff makes a claim for the economic value of her normal life expectancy all to her damage in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

**AS FOR THE SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF; JAQUELINE BOTTEGA**

**TWENTY-NINTH:** The plaintiff repeats and re-alleges each every allegation of the First Cause of Action of the complaint as if fully set forth herein.

**THIRTIETH:** That on August 18, 2001, plaintiff was injured while employed as a crew member of the vessel LOLA by reason of the unseaworthiness of said vessel, without any negligence on part of the plaintiff contributing thereto..

**THIRY-FIRST:** That as a result of the foregoing, the plaintiff was rendered sick, sore, lame and disabled, and sustained severe permanent personal injuries and was prevented from attending her daily labors, thereby losing sums of money which she otherwise would have earned as wages, and has endeavored to be cured of her injuries, and has expended sums of money to maintain herself, and will continue to endure pain and suffering to all her damage.

**THIRTY-SECOND:** That by reason of the foregoing, the plaintiff has been damaged in the sum of FIVE MILLION ($5,000,000) DOLLARS.

**AS FOR THE THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF; JAQUELINE BOTTEGA:**

**THIRTY-THIRD:** That the Plaintiff repeats and realleges all of the foregoing paragraphs of the complaint with the same force and effect as if herein set forth at length.

**THIRTY-FOURTH:** That it was the duty of the defendant to provide the plaintiff with the expenses of her maintenance and cure.

**THIRTY-FIFTH:** That the plaintiff became disabled as heretofore described, but the defendant failed, neglected and refused to furnish the plaintiff with the expenses of his maintenance and cure, all to her damage in a sum, which exceeds **ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS**, or in an amount to be determined at a trial of this matter.

**W H E R E F O R E:** Plaintiff prays that judgment be entered against the defendants in the amount of **FIVE MILLION ($5,000,000.00) DOLLARS** for the First Cause of Action, **FIVE MILLION ($5,000,000.00) DOLLARS** for the Second Cause of Action, and **ONE HUNDRED AND FIFTY THOUSAND ($150,000.00) DOLLARS** for the Third Cause of Action and.

Dated: August 13, 2004

Yours, etc.,

Justin T. Shay (#2781)
Charles S. Beal(#5559)
Cameron & Mittleman, LLP
56 Exchange Terrace
Providence, RI 02903
(401) 331-5700

Gregory D. Bellantone- Of Counsel
Edelman, Krasin & Jaye, PLLC
One Old Country Road – Suite 210
Carle Place, New York 11514
(516) 742-9200
(516) 742-7622 fax

**JURY DEMAND**
Plaintiff demands a trial by jury.

# Exhibit B

L I T T L E H A R B O R

CREWED YACHT CHARTERS DIVISION
TELS: 800/225-7973 – 401/683-7000 – Fax: 401/683-7029

# ~ YACHT CHARTER AGREEMENT ~

*Yacht Name:* LOLA *Type:* Aux Sail *LOA:* 78' *Flag:* USA *Doc #:* 671170

*Max # Guests Aboard: Overnight:* 6 *Day Cruising:* 12 *Number in Crew:* Capt. + 2

Between the Undersigned Parties, it has been Agreed as follows:

*Date of Contract:* July 6, 2001

ORIGINAL

*Owner's Name & Address:*

Lola Marine of Newport, Rhode Island, USA

*Charterer's Name & Address:*

J.W. Kaempfer of London, England

*From: Time:* 1200 *Hours* *Date:* Friday, 10 August 2001

*To: Time:* 1200 *Hours* *Date:* Monday, 20 August, 2001

*Boarding Port:* Vinal Haven, Maine *Disembark:* Vinal Haven, Maine

~ Terms & Fees ~

| | | |
|---|---|---|
| *Terms:* 10 Days @ Base Rate plus all expenses: | Base Rate (US): | $ 27,140 |
| *Deposit Due:* 50% of rate -- Paid by wire 6-18-01 | | $ 13,570 |
| *Balance of Rate Due:* | | $ 13,570 |
| *Plus APA (Advanced Provisioning/Expense Allowance)* | | $ 3,000 |
| TOTAL CHARTER FUNDS DUE: By 10 July, 2001 | | /$ 16,570 |

**WITNESSETH:**

*1. DELIVERY:*

The Owner agrees to deliver the yacht in full commission and in proper working order, outfitted as a yacht of her size, type and accommodations, with full equipment, inclusive of that required by law, and fully furnished, including galley, dining utensils, bed and bath linens; staunch, clean and in good condition throughout and ready for service; and agrees to allow demurrage pro rata to the Charterer for any delay in delivery.

But should it be impossible for the Owner to make delivery as stipulated through causes beyond his control and should such a delivery not be made within 24 hours thereafter, then this Agreement may be canceled by the Charterer and in such event, any charter money paid in advance shall be refunded to him without further liability to the Owner.

*2. INSURANCE:*

The owner represents that the yacht is insured against fire, marine and collision risks and with protection and indemnity coverage for the term of this charter, as follows subject to such deductibles, if any, as are specified below in US Dollars:

Hull: $ 1,500,000 P&I: $ 2,000,000 Deductible: $ 11,250

Said policies of insurance are to be held by the Owner. But should the Owner fail to, or elect not to carry such insurance, he shall assume the same responsibility as if the yacht were so insured.

The Owner's insurance policy does not cover the Charterer's protection and indemnity during the term of the charter. **Charterer may purchase additional Charterer's Legal Liability insurance at his own expense.**

Additional CLL insurance: *Recommended* Charterer Initial:

*3. ACCIDENTS:*

The Owner agrees that should the yacht after delivery sustain breakdown of machinery, or be disabled, or be damaged by fire, grounding, collision, or other cause, so as to prevent the use of the yacht by the Charterer for a period of not less than 24 consecutive hours at any time, the same not being brought about by any act or default of the Charterer, the Owner shall make a pro rata return of hire to the Charterer for such period in excess of the said 24 hours that the yacht shall be disabled or unfit for use.

*4. RUNNING EXPENSES:*

The Charterer agrees to accept the yacht delivered as hereinbefore provided, and to pay all running expenses during the term of the charter.

*5. LIENS*

The Charterer, his agents and employees have no right or power to permit or suffer the creation of any maritime liens against the yacht, except for crew's wages and salvage. The Charterer agrees to indemnify the Owner for any charges or losses in connection therewith, including reasonable attorney's fees.

*6. DRUG RESTRICTION:*

Use or possession of illegal drugs, including marijuana, on board the vessel shall result in immediate termination of the charter with forfeiture of all monies paid.

*7. RE-DELIVERY & INDEMNIFICATION:*

The Charterer agrees to deliver the yacht, her equipment and furnishings, free and clear of any indebtedness incurred for the Charterer's account, at the expiration of this charter, to the Owner, at the agreed port, in as good condition as when delivery was taken, excepting ordinary wear and tear, and any loss or damage for which the Owner is covered by his own insurance, or the Charterer by his own insurance (if any), as set forth in Paragraphs 2 and 7 of this Agreement.

*8. NAVIGATION LIMITS:*

The Charterer agrees to restrict the cruising of the yacht to the navigational limits as set forth in the yacht's insurance policy.

*9. RESTRICTED USE:*

The Charterer agree that the vessel will be employed exclusively as a pleasure vessel for the sole and proper use of himself, his family, his guests and servants, during the term of this charter, and shall not transport merchandise, or carry passengers for pay, or engage in any trade, nor in any way violate the Revenue Laws of the United States, or of any other Government within the jurisdiction of which the yacht may be at any time, and shall comply with the law in all other respects.

*10. NON-ASSIGNMENT:*

The Charterer agrees not to assign this Agreement or sub-charter the yacht without the consent of the Owner in writing.

*11. CHARTERER'S AUTHORITY OVER CREW:*

It is mutually agreed that the full authority regarding the operation and management of the yacht is hereby transferred to the Charterer for the term thereof. In the event, however, that the Charterer wishes to utilize the services of a captain and/or crew members in connection with the operation and management of the yacht, whether said captain and/or crew members are furnished by the Owner, or by the Charterer, it is agreed that said captain and/or crew members are agents and employees of the Charterer and not the Owner.

In the event that local United States Coast Guard, or other regulations, require the Owner exclusively to provide a captain and/or crew, or the Owner agrees to provide a captain and/or crew, they must be competent not only in coastwise piloting, but in deep sea navigation. The captain shall in no way be the agent of the Owner, except that he shall handle clearance and the normal running of the yacht, subject to ports to be called at, and the general course of the voyage; but the captain will be responsible for the safe navigation of the yacht, and the Charterer shall abide by his judgment as to sailing, weather, anchorages and other pertinent matters.

The charter hire includes the services of a properly uniformed crew for the charter period, who will be selected by the Charterer, with the approval of the Owner or the Owner's Agent. Charterer is aware he has a choice of captains. After due consideration, he is hiring the Captain listed on the Yacht Employment Agreement, and will provide additional crew as outlined in same Agreement. Charterer has full right to terminate captain or crew, as they are his employees. However, replacements shall be hired as per Paragraph 11 of this Agreement.

*12. DEFAULTS:*

It is mutually agreed that should any installment of charter money not be paid on the date designated in this Agreement, the Owner shall have the right to resume possession of the yacht and terminate this charter, without prejudice to his rights in respect of any arrears of charter money, or of any breach by the Charterer of the conditions contained herein.

*13. BROKERAGE FEES:*

The Owner and the Charterer recognize Little Harbor Yacht Brokers as the sole broker in connection with this Agreement, and the Owner agrees to pay said broker the mutually agreed brokerage fees in connection with said charter, including any extensions, renewals, subsequent charters, and/or in connection with the subsequent purchase of the yacht by the Charterer within a period of two years from the date of this Agreement.

It is further agreed by the Owner and the Charterer that once this Agreement has been signed by both parties, and a deposit of the charter fee has been paid, the said broker shall have no further obligation or responsibility in connection herewith to either party.

*14. CHARTERER'S CERTIFICATION:*

The Charterer (if he is to operate the yacht himself) certifies that he is experienced and competent in the handling and operation of a yacht of the type and size named in this Agreement, and that he has a sufficient practical knowledge of seamanship, piloting and Rules-of-the-Road. He agrees that he will not allow the yacht to be operated by any person not so qualified during the term of the charter.

*15. ADDITIONAL CONDITIONS:*

The parties further agree hereto that if Charterer must cancel, all monies will be forfeited unless the yacht is rebooked for the original dates reserved as per this Agreement. Refunds will be in full, or prorated according to dates rebooked, less a cancellation fee due the broker of 15% of the charter amount.

If the Owner must cancel, monies paid shall be refunded in full by the Owner to the Charterer. It is further agreed that in such an event, the Owner shall pay the broker the commission due on the full charter fee.

*16. CHARTERER'S RIGHT TO SURVEY:*

If the Charterer desires, he may request a survey of the yacht upon delivery to him, and again upon redelivery to the Owner, and it is agreed that any such survey shall be at the Charterer's expense. However, this provision may be waived.

Charterer wishes to waive the right of survey. Charterer Initial

*17. ARBITRATION:*

Any controversy or claims arising out of, or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, said arbitration to be held in the City and State of the Owner's residence, unless another place is mutually agreed upon. Judgment upon and award reached by the Arbitrator(s) may be entered in any court of said state having jurisdiction.

*18. FURTHER AGREEMENTS:*

*It is further agreed that:*

(1) Signed facsimile copies of this contract, transmitted between the parties, are binding.
(2) There shall be no smoking below deck.
(3) There shall be no pets allowed aboard the yacht.
(4) Gratuity shall be at the Charterer's discretion.
Other:

To the true and faithful performances of the foregoing Agreement, the said parties hereto bind themselves, their heirs, executors, administrators and assigns, each to the other.

IN WITNESS WHEREOF, the parties hereto set their hands:

**CHARTERER:**

| | | | |
|---|---|---|---|
| J.W. Kaempfer | 7-6-01 Date | Witness | 7-6-01 Date |

SIGN HERE

**OWNER:**

| | | | |
|---|---|---|---|
| for Lola Marine, Ltd. | 7/11/01 Date | Witness | 7/19/01 Date |

---

## ACKNOWLEDGMENT

*When the Charterer boards the yacht, the Captain will read him the following statement with another crewman present as a witness:*

This is a bareboat charter and under the terms of a bareboat charter, you are responsible and have full and exclusive possession, command, management and operation of the vessel, as if you owned it, except that the final decision as to the safe navigation is my responsibility.

You are my Employer(s) for the term of the charter.

Charterer(s): J.W. Kaempfer [redacted] Date

Captain: Jason Edge

# Exhibit C

# YACHT EMPLOYMENT AGREEMENT

ORIGINAL

**AGREEMENT** made this 6 day of July, 2001, by and betw...
of London, England, Charterer of the Yacht LOLA, hereinafter
Edgar of ______________________, hereinafter called the Capt...

~ WITNESSETH ~

**WHEREAS,** the Charterer has under agreement the Yacht LOLA, pursuant to this bareboat agreement, wherein it is the Employer's obligation to furnish the said yacht with a competent master and crew and,

**WHEREAS,** the Captain is a competent yacht master, having had experience in coastal and inland waters of New England, Maine & the Atlantic Ocean and will furnish two (2) crew for the management and navigation of the said yacht and,

**WHEREAS,** the parties desire to reduce their agreement to written terms, therefore, in consideration of the premises and of the agreements hereinafter contained, it is agreed as follows:

1. Employer hereby hires Captain Robert Edgar as the Master of the said yacht, to act as such Master so long as the yacht is under charter to Employer.

2. Yacht captain shall be properly uniformed and the crew shall comprise of the following: Captain: Robert Edgar Chef: ______________ Mate/Stew: ______________

3. Yacht Captain shall be paid for his services and the services of his crew, as per this agreement and Employer shall furnish the Yacht Captain, accommodations aboard and food during the term of this agreement. Captain's wages are included in the gross charter fee quotes in the attached agreement. Crew gratuity is *not included* in the gross charter fee quoted on the attached agreement and is at the sole discretion of the Employer.

4. The terms of this agreement shall commence and terminate at the time and date pursuant to the attached Yacht Charter Agreement, unless sooner terminated by the Yacht Charter Agreement for any reason. In the event that the Yacht Charter Agreement is sooner terminated, the Captain will receive a pro-rated share of the agreed compensation for his services.

**IT WITNESS WHEREOF,** the parties have duly executed this agreement on the day indicated next to their respective signatures.

| | | |
|---|---|---|
| Employer: J.W. Kaempfer | Date 7-6-01 | Witness |
| Captain: Robert Edgar | Date 7/6/01 | Witness |

# CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was mailed on January 20, 2006, postage prepaid, to:

Justin T. Shay, Esq.
Cameron & Mittleman
56 Exchange Terrace
Providence, RI 02903

Gregory D. Bellantone, Esq.
Edelman, Krasin & Jaye, PLLC
Suite 210
One Old country Road
Carle Place, NY 11514

Norman A Peloquin, II, Esq.
Saunders & Saunders, LLP
700 Pleasant Street
New Bedford, Massachusetts 02740

J.W. Kaempfer
c/o Lawrence Brennan, Esq.
Wilson Elser Moskowitz Edelman & Dicker
150 E 42nd Street Floor 19
New York, New York 10017-5639

J.W. Kaempfer
C/o The Kaempfer Co.
1501 K Street, N.W., Suite 300
Washington, D.C. 20005

Frederick A. Lovejoy