**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

---------------------------------------------------------------------------X

**JACQUELINE BOTTEGA,**

**Plaintiff,**

**CIVIL ACTION**
**No. 04-323 (MML)(DLM)**

**v.**

**WILLIAM B. HALSTEAD,**
**EDGAR YACHT MANAGEMENT, INC., and**
**LOLA MARINE LTD.,**

**Defendants**

---------------------------------------------------------------------------X

**LOLA MARINE, LTD.,**

**Third-Party Plaintiff,**

**v.**

**J.W. KAEMPFER.**

**Third-Party Defendant.**

---------------------------------------------------------------------------X

# IMMEDIATE HEARING REQUESTED

## THIRD-PARTY DEFENDANT J.W. KAEMPFER'S MEMORANDUM OF LAW SEEKING A PROTECTIVE ORDER TO QUASH LOLA MARINE, LTD.'S DISCOVERY DEMANDS

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and Rule 9 and Rule 26 of the Local Rules of the District of Rhode Island, Third-Party Defendant, J.W. KAEMPFER (hereinafter "KAEMPFER") by and through his attorneys, SAYER, REGAN, THAYER & FLANAGAN, respectfully submit this memorandum of law seeking an immediate hearing and a protective order to quash the discovery demands served by Defendant and Third-Party Plaintiff LOLA MARINE, LTD. (hereinafter "LOLA") until the completion of judicial mediation.

## PRELIMINARY STATEMENT

KAEMPFER respectfully submits this memorandum of law in support of its emergency motion seeking an immediate hearing and a protective order to quash LOLA's discovery demands. The Yacht Charter Agreement executed between LOLA and KAEMPFER calls for arbitration. LOLA has propounded discovery demands which seek information unrelated to the upcoming mediation. KAEMPFER objects to these discovery demands because they would seriously be detrimental to KAEMPFER- any response would risk waiving KAEMPFER's right to proceed to arbitration with LOLA. KAEMPFER, therefore, seeks an immediate hearing lasting approximately an hour and a protective order to quash LOLA's discovery demands. Alternatively, should the Court determine that responses are necessary, KAEMPFER will timely file responses without prejudice to its right to proceed to arbitration.

Moreover, KAEMPFER understands that arbitration would only be between KAEMPFER and LOLA and that he would still be a party to the underlying litigation. KAEMPFER restates his willingness to participate at the Court-ordered mediation now scheduled for March 9, 2006.

Furthermore, on or about February 22, 2006 KAEMPFER discovered that LOLA had modified LOLA's service of process protocol regarding, apparently, one specific document. It was discovered that LOLA had not served KAEMPFER'S attorneys at Wilson Elser Moskowitz Edelman & Dicker a copy of LOLA's Request For Production of Documents to KAEMPFER. Said Request for Production of Documents requires documents to be produced by KAEMPFER on or about March 2, 2006. This LOLA service was unlike any other LOLA service prior to or after said service in which LOLA had, and has continued to, serve both KAEMPFER attorneys

of record. KAEMPFER seeks Court relief from said Request For Production of Documents and Court assistance in determining LOLA's service protocol.

## STAEMENT OF FACTS

Based upon the Report and Recommendation of Magistrate Judge Martin, this is an action pursuant to the Jones Act, 46 U.S.C. App. § 688 and the Court's admiralty and maritime jurisdiction. Plaintiff Jacqueline Bottega allegedly was injured on August 18, 2001, while employed as a member of the crew of S/V LOLA, owned by LOLA.

In February 2001, plaintiff was hired as a stewardess by Robert Edgar, the captain of S/V LOLA. During the time she was employed as a member of the crew, plaintiff was paid by Defendant Edgar Yacht Management. In July 2001, LOLA chartered the vessel to third party defendant KAEMPFER for the period August 10-20, 2001.

The Yacht Charter Agreement calls for arbitration between LOLA and KAEMPFER which states: "Any controversy or claims arising out of, or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, said arbitration to be held in the City and State of Owner's residence, unless another place is generally agreed upon. Judgment upon and award reached by the Arbitrator(s) may be ordered in any court of said state having jurisdiction." [Exhibit 1].

After her accident, plaintiff received maintenance and cure from LOLA's insurance carrier in the approximate amount of $40,000.00. Plaintiff then commenced this action on August 13, 2004. On August 1, 2005, LOLA impleaded KAEMPFER, after the July 21, 2005 decision of Magistrate Judge Martin, which estopped LOLA from arguing that it was not the plaintiff's employer.

In January 2006, this Court ordered mediation for March 9, 2006 and modified discovery for the purpose of the mediation. After the conference, LOLA propounded Request for Admissions to KAEMPFER which called for legal conclusions. [Exhibit 2]. On February 9, 2006, KAEMPFER filed its answer and counter-claims in this action asserting the arbitration clause as both an affirmative defense and counter-claim. KAEMPFER also requested in the Answer that this Court compel arbitration pursuant to the above terms. On February 14, 2006, KAEMPFER received Interrogatories from LOLA which does not seek information pertinent to mediation, as the Court previously instructed. [Exhibit 3]. Although KAEMPFER has begun drafting responses to the interrogatories, the cost and efforts exhausted in responding have distracted KAEMPFER from concentrating on resolving this matter at mediation. On February 21, 2006, KAEMPFER duly responded to the Request for Admissions even though the Court modified discovery for the purpose of mediation. In light of the March 9th mediation, KAEMPFER has not propounded any discovery demands on LOLA.

On February 21, 2006, LOLA contacted KAEMPFER's New York counsel, Lawrence B. Brennan, seeking consent to move the mediation. KAEMPFER was willing to consent to a short delay if LOLA was willing to agree either that the responses to the discovery demands would be without prejudice to KAEMPFER's right to proceed to arbitration pursuant to the Federal Arbitration Act or the date for the responses were adjourned until after the mediation. LOLA refused, forcing KAEMPFER to make this motion for a protective order to quash the discovery demands.

Furthermore, on or about February 22, 2006 KAEMPFER discovered that LOLA had modified LOLA's service of process protocol regarding, apparently, one specific document. It was discovered that LOLA had not served KAEMPFER'S attorneys at Wilson Elser Moskowitz

Edelman & Dicker a copy of LOLA's Request For Production of Documents [Exhibit 4] to KAEMPFER. Said Request for Production of Documents requires documents to be produced by KAEMPFER on or about March 2, 2006. This LOLA service was unlike any other LOLA service prior to or after said service in which LOLA had, and has continued to, serve both KAEMPFER attorneys of record. KAEMPFER seeks Court relief from said Request For Production of Documents and Court assistance in determining LOLA's service protocol.

## ARGUMENT

**THE COURT SHOULD QUASH LOLA'S DISCOVERY DEMANDS AND ISSUE A PROTECTIVE ORDER BECAUSE THE FILING OF RESPONSES WOULD WAIVE KAEMPFER'S RIGHT TO PROCEED TO ARBITRATION.**

"Parties do not have the unrestrained right of discovery in all circumstances. The discovery rules vest broad discretion in trial courts. . . . which have the right to exercise appropriate control of the discovery process when necessary and may deny, limit, or qualify it. Appropriate orders restricting the scope and manner of exercising discovery rights may be rendered in proper circumstances." *Global Maritime Leasing, Inc. v. M/S North Breeze*, 451 F. Supp. 965, 966-967 (D.R.I. 1978) (quoting *Associated Metals & Minerals Corporation v. S. S. Geert Howaldt,* 348 F.2d 457, 459 (5th Cir. 1965)). Rule 26(c) Federal Rules of Civil Procedure permits the district court to grant a protective order in the discovery context for "good cause shown." *Ramirez Rodriguez* v. *Boehringer Ingelheim Pharms., Inc.,* 425 F.3d 67, 73 (1st Cir. 2005). Here, good cause is shown because any response to the discovery requests could waive KAEMPFER's right to proceed to arbitration with LOLA.

The Federal Arbitration Act allows a party to an arbitration clause to stay any action to which it is a party while an arbitrable issue is referred to arbitration. Section three of the Act states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. 9 U.S.C. § 3.

*In re Complaint of Ballard Shipping Co.*, 752 F. Supp. 546, 547-548 (D.R.I. 1990), *affirmed in part and reversed in part by*, *Ballard Shipping Co. v. Beach Shellfish,* 32 F.3d 623, (1st Cir. 1994).

Because arbitration provisions are strongly favored under federal law, "waiver is not to be lightly inferred." *Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 806 F.2d 291, 293 (1st Cir. 1986) (citation omitted). Courts generally should be wary of "being overready to find a waiver." *Jones Motor Co. v. Chauffeurs, Teamsters and Helpers Local Union No. 633*, 671 F.2d 38, 43 (1st Cir.), *cert. denied* 459 U.S. 943 (1982). Indeed the First Circuit has stated:

> In considering the issue of waiver, it is paramount that we keep in mind the Supreme Court's admonition that, due to the strong federal policy favoring arbitration agreements, any doubt concerning arbitrability 'should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Page*, 806 F.2d at 293 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)).

Extreme care must be used in determining waiver's existence in order to enforce the congressional mandate in the Federal Arbitration Act. However, the doctrine of waiver is not an

empty shell. *See Hurlbut v. Gantshar*, 674 F. Supp. 385, 388 (D. Mass. 1987) ("Despite policies favoring arbitration . . . courts have long held that parties may waive their rights to arbitration and present their dispute to a court."). In *Jones Motor Co*., the First Circuit set out the following framework for use in analyzing the issue of waiver

> In determining whether a party to an arbitration agreement, has waived its arbitration right, federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, . . . whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, . . . whether there has been a long delay in seeking a stay or whether the enforcement of arbitration was brought up when trial was near at hand. . . .Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, . . . whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration . . .] had taken place, . . . and whether the other party was affected, misled, or prejudiced by the delay . . . .

*Jones Motor Co*., 671 F.2d at 44 (bracketed text in original) (quoting *Reid Burton Constr., Inc. v. Carpenters Dist. Council*, 614 F.2d 698, 702 (10th Cir.), *cert. denied*, 449 U.S. 824 (1980)).

Several decisions have found a defendant's litigation activity to constitute waiver. *See e.g. Caribbean Ins. Servs., Inc. v. American Bankers Life Assurance Co*., 715 F.2d 17, 20 (1st Cir. 1983) ("[A] party's willingness to submit a dispute to trial on the merits may imply a waiver of the right to arbitration."). Moreover, it has long been clear that a party asserting waiver of arbitration must show prejudice caused by delay. See, *Commercial Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 390 (1st Cir. 1993); Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc*., 806 F.2d 291, 293-294 (1st Cir. 1986); *Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 807 F.2d 16, 18 (1st Cir. 1986).

Although KAEMPFER has participated in the litigation by filing its answer and counter-claim to LOLA's Third-Party Complaint, KAEMPFER immediately notified LOLA of its intentions to proceed to arbitration when he asserted the arbitration clause as both an affirmative defense and counter-claim. If the Court ordered mediation does not resolve all claims of all parties, KAEMPFER requests that this Court compel arbitration pursuant to the terms of the parties' arbitration agreement. KAEMPFER understands that any arbitration between himself and LOLA will not relieve him as a party to the underlying litigation.

KAEMPFER, however, objects to the present requirement to respond to the discovery demands propounded by LOLA because any response by KAEMPFER could be inconsistent with KAEMPFER's intention to proceed to arbitration and may unintentionally waive its right to arbitration. KAEMPFER has in good faith discussed this issue and LOLA has refused to be accommodating. Thus, KAEMPFER respectfully requests that this Court grant an immediate hearing and issue a protective order to quash LOLA's discovery demands. Alternatively, should the Court order KAEMPFER to respond to the discovery demands, KAEMPFER will timely file its response without prejudice to its right to proceed to arbitration.

## CONCLUSION

KAEMPFER's response to the discovery demands risks waiving KAEMPFER's right to proceed to arbitration. Thus, KAEMPFER respectfully requests that this Court grant an immediate hearing lasting approximately an hour and issue a protective order to quash LOLA's discovery demands. Alternatively, should the Court order KAEMPFER to respond to the discovery demands, KAEMPFER will timely file its response without prejudice to its right to proceed to arbitration.

Dated: February 24, 2006
Newport, Rhode Island

Yours, etc.

By: ______________________
Francis J. Flanagan
Sayer Regan Thayer & Flanagan
Attorneys for Third-Party Defendant
J.W. KAEMPFER
130 Bellevue Avenue
Newport, Rhode Island 02840
Telephone : (401) 849-3040
Facsimile : (401) 849-4330

Lawrence B. Brennan
Christine A. Civitano
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
150 East 42nd Street
New York, New York 10017-5639
Telephone: (212) 490-3000
Facsimile: (212)490-3038

**CERTIFICATE OF SERVICE**

I hereby certify that I sent a true and accurate copy of the following: *THIRD-PARTY DEFENDANT J.W. KAEMPFER'S MEMORANDUM OF LAW SEEKING A PROTECTIVE ORDER AND IMMEDIATE HEARING TO QUASH LOLA MARINE, LTD.'S DISCOVERY DEMANDS* on behalf of *THIRD-PARTY DEFENDANT J.W. KAEMPFER* via Federal Express to the following:

Frederick A. Lovejoy
LOVEJOY & ASSOCIATES
Attorneys for Defendant and
Third-Party Plaintiff
LOLA MARINE, LTD.
1536 Westminster Street
Providence, Rhode Island 02909
(401) 273-7747

Justin T. Shay
Charles S. Beal
CAMERON & MITTLEMAN, LLP
Attorneys for Plaintiff
JACQUELINE BOTTEGA
56 Exchange Terrace
Providence, RI 02903
(401)331-5700

Gregory D. Bellantone
EDLEMAN, KRASIN & JAYE, PLLC
Attorneys for Plaintiff
JACQUELINE BOTTEGA
One Old County Road
Suite 210
Carle Place, New York 11814
(516)742-9200

Norman A. Peloquin, II, Esq.
SAUNDERS & SAUNDERS
Attorneys for Defendant
EDGAR YACHT MANAGEMENT, INC.
700 Pleasant Street
New Bedford, MA 02740
(508) 999-5400

Dated: February 24, 2006

Francis J. Flanagan

# EXHIBIT 1

L I T T L E H A R B O R

CREWED YACHT CHARTERS DIVISION
TELS: 800/225-7573 ~ 401/683-7000 ~ Fax 401/683-7029

# ~ YACHT CHARTER AGREEMENT ~

*Yacht Name:* LOLA *Type:* Aux Sail *LOA:* 75' *Flag:* USA *Doc #:* 671170

*Max # Guests Aboard: Overnight:* 6 *Day Cruising:* 12 *Number in Crew:* Capt. + 2

Between the Undersigned Parties, it has been Agreed as follows:

*Date of Contract:* July 6, 2001

*Owner's Name & Address:*

Lola Marina of Newport, Rhode Island, USA

ORIGINAL

*Charterer's Name & Address:*

J.W. Kaempfer of London, England

| | | | |
|---|---|---|---|
| *From: Time:* | 1200 Hours | *Date:* | Friday, 10 August, 2001 |
| *To: Time:* | 1200 Hours | *Date:* | Monday, 20 August, 2001 |
| *Boarding Port:* | Vinal Haven, Maine | *Disembark:* | Vinal Haven, Maine |

~ Terms & Fees ~

| | | |
|---|---|---|
| *Terms:* 10 Days @ Base Rate plus all expenses: | Base Rate (US): | $27,140 |
| *Deposit Due:* 50% of rate -- Paid by wire 6-18-01 | | $ 13,570 |
| *Balance of Rate Due:* | | $ 13,570 |
| *Plus APA (Advanced Provisioning/Expense Allowance)* | | $ 3,000 |
| TOTAL CHARTER FUNDS DUE: By 10 July, 2001 | | $16,570 |

One Little Harbor Landing • Portsmouth, Rhode Island 02871
Phone 401-683-7000 • Fax 401-683-7029 • Website: WWW.LHYB.COM

CUSTOM YACHTS | YACHT BROKERS | MARINE SERVICES

19/26

WITNESSETH:

*1. DELIVERY:*

The Owner agrees to deliver the yacht in full commission and in proper working order, outfitted as a yacht of her size, type and accommodations, with full equipment, inclusive of that required by law, and fully furnished, including galley, dining utensils, bed and bath linens; staunch, clean and in good condition throughout and ready for service; and agrees to allow demurrage pro rata to the Charterer for any delay in delivery.

But should it be impossible for the Owner to make delivery as stipulated through causes beyond his control and should such a delivery not be made within 24 hours thereafter, then this Agreement may be canceled by the Charterer and in such event, any charter money paid in advance shall be refunded to him without further liability to the Owner.

*2. INSURANCE:*

The owner represents that the yacht is insured against fire, marine and collision risks and with protection and indemnity coverage for the term of this charter, as follows subject to such deductibles, if any, as are specified below in US Dollars

Hull: $ 1,500,000 P&I: $ 2,000,000 Deductible: $ 11,250

Said policies of insurance are to be held by the Owner. But should the Owner fail to, or elect not to carry such insurance, he shall assume the same responsibility as if the yacht were so insured.

*The Owner's insurance policy does not cover the Charterer's protection and indemnity during the term of the charter.* Charterer may purchase additional Charterer's Legal Liability insurance at his own expense.

Additional CLL insurance: *Recommended* Charterer Initials: [signature]

*3. ACCIDENTS:*

The Owner agrees that should the yacht after delivery sustain breakdown of machinery, or be disabled, or be damaged by fire, grounding, collision, or other cause, so as to prevent the use of the yacht by the Charterer for a period of not less than 24 consecutive hours at any time, the same not being brought about by any act or default of the Charterer, the Owner shall make a pro rata return of hire to the Charterer for such period in excess of the said 24 hours that the yacht shall be disabled or unfit for use.

*4. RUNNING EXPENSES:*

The Charterer agrees to accept the yacht delivered as hereinbefore provided, and to pay all running expenses during the term of the charter.

*5. LIENS*

The Charterer, his agents and employees have no right or power to permit or suffer the creation of any maritime liens against the yacht, except for crew's wages and salvage. The Charterer agrees to indemnify the Owner for any charges or losses in connection therewith, including reasonable attorney's fees.

*6. DRUG RESTRICTION:*

Use or possession of illegal drugs, including marijuana, on board the vessel shall result in immediate termination of the charter with forfeiture of all monies paid.

20/26

*7. RE-DELIVERY & INDEMNIFICATION:*

The Charterer agrees to deliver the yacht, her equipment and furnishings, free and clear of any indebtedness incurred for the Charterer's account, at the expiration of this charter, to the Owner, at the agreed port, in as good condition as when delivery was taken, excepting ordinary wear and tear, and any loss or damage for which the Owner is covered by his own insurance, or the Charterer by his own insurance (if any), as set forth in Paragraphs 2 and 7 of this Agreement.

*8. NAVIGATION LIMITS:*

The Charterer agrees to restrict the cruising of the yacht to the navigational limits as set forth in the yacht's insurance policy.

*9. RESTRICTED USE:*

The Charterer agree that the vessel will be employed exclusively as a pleasure vessel for the sole and proper use of himself, his family, his guests and servants, during the term of this charter, and shall not transport merchandise, or carry passengers for pay, or engage in any trade, nor in any way violate the Revenue Laws of the United States, or of any other Government within the jurisdiction of which the yacht may be at any time, and shall comply with the law in all other respects.

*10. NON-ASSIGNMENT:*

The Charterer agrees not to assign this Agreement or sub-charter the yacht without the consent of the Owner in writing.

*11. CHARTERER'S AUTHORITY OVER CREW:*

It is mutually agreed that the full authority regarding the operation and management of the yacht is hereby transferred to the Charterer for the term thereof. In the event, however, that the Charterer wishes to utilize the services of a captain and/or crew members in connection with the operation and management of the yacht, whether said captain and/or crew members are furnished by the Owner, or by the Charterer, it is agreed that said captain and/or crew members are agents and employees of the Charterer and not the Owner.

In the event that local United States Coast Guard, or other regulations, require the Owner exclusively to provide a captain and/or crew, or the Owner agrees to provide a captain and/or crew, they must be competent not only in coastwise piloting, but in deep sea navigation. The captain shall in no way be the agent of the Owner, except that he shall handle clearance and the normal running of the yacht, subject to ports to be called at, and the general course of the voyage; but the captain will be responsible for the safe navigation of the yacht, and the Charterer shall abide by his judgment as to sailing, weather, anchorages and other pertinent matters.

The charter hire includes the services of a properly uniformed crew for the charter period, who will be selected by the Charterer, with the approval of the Owner or the Owner's Agent. Charterer is aware he has a choice of captains. After due consideration, he is hiring the Captain listed on the Yacht Employment Agreement, and will provide additional crew as outlined in same Agreement. Charterer has full right to terminate captain or crew, as they are his employees. However, replacements shall be hired as per Paragraph 11 of this Agreement

*12. DEFAULTS:*

It is mutually agreed that should any installment of charter money not be paid on the date designated in this Agreement, the Owner shall have the right to resume possession of the yacht and terminate this charter, without prejudice to his rights in respect of any arrears of charter money, or of any breach by the Charterer of the conditions contained herein.

21 | 26

*13. BROKERAGE FEES:*

The Owner and the Charterer recognize Little Harbor Yacht Brokers as the sole broker in connection with this Agreement, and the Owner agrees to pay said broker the mutually agreed brokerage fees in connection with said charter, including any extensions, renewals, subsequent charters, and/or in connection with the subsequent purchase of the yacht by the Charterer within a period of two years from the date of this Agreement.

It is further agreed by the Owner and the Charterer that once this Agreement has been signed by both parties, and a deposit of the charter fee has been paid, the said broker shall have no further obligation or responsibility in connection herewith to either party.

*14. CHARTERER'S CERTIFICATION:*

The Charterer (If he is to operate the yacht himself) certifies that he is experienced and competent in the handling and operation of a yacht of the type and size named in this Agreement, and that he has a sufficient practical knowledge of seamanship, piloting and Rules-of-the-Road. He agrees that he will not allow the yacht to be operated by any person not so qualified during the term of the charter.

*15. ADDITIONAL CONDITIONS:*

The parties further agree hereto that if Charterer must cancel, all monies will be forfeited unless the yacht is rebooked for the original dates reserved as per this Agreement. Refunds will be in full, or prorated according to dates rebooked, less a cancellation fee due the broker of 15% of the charter amount.

If the Owner must cancel, monies paid shall be refunded in full by the Owner to the Charterer. It is further agreed that in such an event, the Owner shall pay the broker the commission due on the full charter fee.

*16 CHARTERER'S RIGHT TO SURVEY:*

If the Charterer desires, he may request a survey of the yacht upon delivery to him, and again upon re-delivery to the Owner, and it is agreed that any such survey shall be at the Charterer's expense. However, this provision may be waived.

Charterer wishes to waive the right of survey. Charterer Initial [initials]

*17. ARBITRATION:*

Any controversy or claims arising out of, or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, said arbitration to be held in the City and State of the Owner's residence, unless another place is mutually agreed upon. Judgment upon and award reached by the Arbitrator(s) may be entered in any court of said state having jurisdiction.

*18. FURTHER AGREEMENTS:*

*It is further agreed that:*

(1) Signed facsimile copies of this contract, transmitted between the parties, are binding.
(2) There shall be no smoking below deck.
(3) There shall be no pets allowed aboard the yacht.
(4) Gratuity shall be at the Charterer's discretion.
Other:

22|26

To the true and faithful performance of the foregoing Agreement, the said parties hereto bind themselves, their heirs, executors, administrators and assigns, each to the other.

IN WITNESS WHEREOF, the parties hereto set their hands:

**CHARTERER:**

| | | | |
|---|---|---|---|
| [signature] | 7-6-01 | [signature] | 7-6-01 |
| J.W. Kaempfer | Date | Witness | Date |

SIGN HERE

**OWNER:**

| | | | |
|---|---|---|---|
| [signature] | 7/9/01 | [signature] | 7/19/01 |
| for Lola Marine, Ltd. | Date | Witness | Date |

## ACKNOWLEDGMENT

*When the Charterer boards the yacht, the Captain will read him the following statement with another crewman present as a witness:*

This is a bareboat charter and under the terms of a bareboat charter, you are responsible and have full and exclusive possession, command, management and operation of the vessel, as if you owned it, except that the final decision as to the safe navigation is my responsibility.

You are my Employer(s) for the term of the charter.

Charterer(s): [signature] J.W. Kaempfer -6-01 Date

Captain: [signature] ... Edey

23 | 26

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

---------------------------------------------------------------X

JACQUELINE BOTTEGA,
Plaintiff,

CIVIL ACTION
No. 04-323ML

v.

WILLIAM B. HALSTEAD,
EDGAR YACHT MANAGEMENT, INC., and
LOLA MARINE LTD.,
Defendants.

---------------------------------------------------------------X

LOLA MARINE, LTD.,
Third-Party Plaintiff,

v.

J. W. KAEMPFER,

Third-Party Defendant

---------------------------------------------------------------X

REQUESTS FOR ADMISSIONS

PLEASE TAKE NOTICE that pursuant to the provisions of Fed. R. Civ. P., Rule 36, J.W. Kaempfer is called upon to make the following admissions within thirty (30) days after the service of a copy of this request.

1. That on August 18, 2001, Robert Edgar was in the employ of J.W. Kaempfer.
2. That on August 18, 2001, Jacqueline Bottega was in the employ of J.W. Kaempfer.
3. That attached hereto as Exhibit 1 is a true and accurate photocopy of the Yacht Employment Agreement entered into between J.W. Kaempfer and Robert Edgar on July 6, 2001.

4. That if the injuries alleged by plaintiff Jacqueline Bottega were caused by the negligence of Robert Edgar, the Third-Party defendant, J.W. Kaempfer, is liable for the said injuries pursuant to the doctrine of respondeat superior.

5. That in connection with chartering the S/V LOLA, for the period of August 10 to August 20, 2001, J.W. Kaempfer purchased an insurance policy which was to cover any injuries that might be sustained by the crew members on board the S/V LOLA.

6. That on July 6, 2001, J.W. Kaempfer acknowledged that the charter he had entered into with Lola Marine, Ltd., for the period of August 10 to August 20, 2001, was a bareboat charter.

7. That on July 6, 2001, J.W. Kaempfer acknowledged that the crew and captain that would be on board the S/V LOLA for the term of the charter of the S/V LOLA; i.e. August 10 to August 20, 2001, were his employees.

8. That J.W. Kaempfer agreed that the insurance policy purchased by the registered owner; i.e., Lola Marine, Ltd., did not cover J.W. Kaempfer or his employees during the period of August 10 to August 20, 2001.

Dated: Providence, Rhode Island
January 20, 2006

LOVEJOY & ASSOCIATES
Attorneys for Defendant and
Third-Party Plaintiff
LOLA MARINE, Ltd.

By: [signature]
Frederick A. Lovejoy
(Bar No. 5313)
1536 Westminster Street
Providence, Rhode Island 02909
(401) 273-7747
(401) 273-4818 Telefax

# CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was mailed on January 20, 2006, postage prepaid, to:

Justin T. Shay, Esq.
Cameron & Mittleman
56 Exchange Terrace
Providence, RI 02903

Gregory D. Bellantone, Esq.
Edelman, Krasin & Jaye, PLLC
Suite 210
One Old country Road
Carle Place, NY 11514

Norman A Peloquin, II, Esq.
Saunders & Saunders, LLP
700 Pleasant Street
New Bedford, Massachusetts 02740

J.W. Kaempfer
c/o Lawrence Brennan, Esq.
Wilson Elser Moskowitz Edelman & Dicker
150 E 42nd Street Floor 19
New York, New York 10017-5639

J.W. Kaempfer
C/o The Kaempfer Co.
1501 K Street, N.W., Suite 300
Washington, D.C. 20005

Frederick A. Lovejoy

# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

-----------------------------------------------------------X

JACQUELINE BOTTEGA,
Plaintiff,

v.

WILLIAM B. HALSTEAD,
EDGAR YACHT MANAGEMENT, INC., and
LOLA MARINE LTD.,
Defendants.

-----------------------------------------------------------X

LOLA MARINE, LTD.,
Third-Party Plaintiff,

v.

J. W. KAEMPFER,
Third-Party Defendant

-----------------------------------------------------------X

CIVIL ACTION
No. 04-323ML

February 6, 2006

INTERROGATORIES

PLEASE TAKE NOTICE that the defendant/third-party plaintiff Lola Marine, Ltd. hereby demands that third-party defendant J.W. Kaempfer provide certified answers to the following interrogatories within the time period prescribed by Fed. R. Civ. P., Rule 33.

1. State specifically the factual basis/reason underlying each of the affirmative defenses asserted by J.W. Kaempfer in his ". . . Answer with Affirmative Defenses and Counterclaim to Lola Marine, Ltd.'s Amended Third-Party Complaint," dated February 2, 2006.

2. State specifically the legal basis/reason underlying each of the affirmative defenses asserted by J.W. Kaempfer in his ". . . Answer with Affirmative Defenses and Counterclaim to Lola Marine, Ltd.'s Amended Third-Party Complaint," dated February 2, 2006.

Dated: Providence, Rhode Island
February 6, 2006

Lovejoy & Associates
Attorneys for Defendant/Third-Party Plaintiff,
Lola Marine, Ltd.

By: ______________________
Frederick A. Lovejoy (Bar No. 5313)
1536 Westminster Street
Providence, Rhode Island 02909
(401) 273-7747
(401) 273-4818 telefax

BottegaInterrogatories.doc

CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was mailed on February 6, 2006, postage prepaid, to:

Justin T. Shay, Esq.
Cameron & Mittleman
56 Exchange Terrace
Providence, RI 02903

Gregory D. Bellantone, Esq.
Edelman, Krasin & Jaye, PLLC
Suite 210
One Old country Road
Carle Place, NY 11514

Norman A Peloquin, II, Esq.
Saunders & Saunders, LLP
700 Pleasant Street
New Bedford, Massachusetts 02740

Lawrence Brennan, Esq.
Wilson Elser Moskowitz Edelman & Dicker
150 E 42nd Street Floor 19
New York, New York 10017-5639

Francis J. Flanagan, Esq.
Sayer Regan Thayer & Flanagan
130 Bellevue Avenue, Unit 2
Newport, Rhode Island 02840-7424

Frederick A. Lovejoy

EXHIBIT 4

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

-----------------------------------------------------------X
JACQUELINE BOTTEGA,
Plaintiff,

v.

EDGAR YACHT MANAGEMENT, INC., and
LOLA MARINE LTD.,
Defendants.
-----------------------------------------------------------X
LOLA MARINE, LTD.,
Third-Party Plaintiff,
v.

J. W. KAEMPFER,

Third-Party Defendant
-----------------------------------------------------------X

CIVIL ACTION
No. 04-323ML (DLM)

January 30, 2006

REQUEST FOR PRODUCTION OF DOCUMENTS

PLEASE TAKE NOTICE that in accordance with Rule 34 of the Federal Rules of Civil Procedure, defendant Lola Marine, Ltd. requests that the Third-Party defendant, J.W. Kaempfer, produce the following original documents and/or materials on March 2, 2006, at 10:00 a.m., for inspection and photocopying at the offices of Lovejoy & Associates, 1536 Westminster Street, Providence, Rhode 02909. If no originals of a document exist, plaintiff is to produce the requested document(s) in whatever medium it/they exist. This request is to be deemed continuing up to and including the time of trial and defendant shall be permitted to inspect any copy of any document not presently available which subsequently becomes available.

1. Any and all insurance policies that insured/covered J.W. Kaempfer, his agents, companies, and/or affiliates in respect to the S/V LOLA.

2. Any and all insurance policies that were in force in August 2001 which named J.W. Kaempfer as an insured/additional insured and that may cover the claims/damages claimed by Jacqueline Bottega in this action.

3. Any and all writings and/or documents by and between J.W. Kaempfer and/or William B. Halstead, Edgar Yacht Management, Inc., and Lola Marine, Ltd. and/or any agent(s) of any of the above which relate to the chartering of the S/V LOLA, the hiring of its captain and crew and/or relating to the injuries alleged to have been sustained by one Jacqueline Bottega.

4. All underwriting files and/or claims files maintained by any underwriters to which J.W. Kaempfer has submitted a claim with respect to the claims of Jacqueline Bottega and/or believes covers the claims of Jacqueline Bottega.

Dated: Providence, Rhode Island
January 30, 2006

Lovejoy & Associates, LLC
Attorneys for Defendant/Third-Party Plaintiff, Lola Marine, Ltd.

By:_______________________

Frederick A. Lovejoy (Bar No. 5313)
1536 Westminster Street
Providence, Rhode Island 02909
(401) 273-7747
(401) 273-4818 telefax

BottegaProduction012506.doc

CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was mailed on January 30, 2006, postage prepaid, to:

Justin T. Shay, Esq.
CAMERON & MITTLEMAN, LLP
56 Exchange Terrace
Providence, RI 02903

Gregory D. Bellantone, Esq.
EDELMAN, KRASIN & JAYE, PLLC
One Old Country Road – Suite 210
Carle Place, NY 11514

Norman A Peloquin, II, Esq.
Saunders & Saunders, LLP
700 Pleasant Street
New Bedford, Massachusetts 02740

Francis J. Flanagan, Esq.
Sayer Regan Thayer & Flanagan
130 Bellevue Avenue
Unit 2
Newport, Rhode Island 02840-7424

Frederick A. Lovejoy