**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

-----------------------------------------------------------------------------X
**JACQUELINE BOTTEGA,**

**Plaintiff,** **CIVIL ACTION**
**No. 04-323 (MML)(DLM)**

**v.**

**WILLIAM B. HALSTEAD,**
**EDGAR YACHT MANAGEMENT, INC., and**
**LOLA MARINE LTD.,**

**Defendants**
-----------------------------------------------------------------------------X
**LOLA MARINE, LTD.,**

**Third-Party Plaintiff,**

**v.**

**J.W. KAEMPFER.**

**Third-Party Defendant.**
-----------------------------------------------------------------------------X

**THIRD-PARTY DEFENDANT J.W. KAEMPFER'S**
**PRETRIAL STATEMENT**

NOW COMES Third-Party Defendant, J.W. KAEMPFER (hereinafter "KAEMPFER") by and through his attorneys, SAYER, REGAN, THAYER & FLANAGAN, and respectfully submits his pretrial statement pursuant to this Court's Pretrial Order dated January 30, 2006 as follows:

**Statement of Defense**

- On August 2, 2005, after Judge Martin issued his Report and Recommendation[1], Defendant and Third-Party Plaintiff, LOLA MARINE, LTD. (hereinafter "LOLA MARINE") filed a third-party complaint, pursuant to Fed.R.Civ. P 14 (c), alleging

1 2005 U.S. Dist. LEXIS 16627 (D.R.I. 2005).

that KAEMPFER was Plaintiff's Jones Act employer and that KAEMPFER was liable for the S/V LOLA's unseaworthiness. LOLA MARINE also asserted a claim for contribution and/or indemnity pursuant to the terms of the charter party. LOLA MARINE subsequently amended the third-party complaint on January 20, 2006.

- KAEMPFER contends that LOLA MARINE's third-party claim against him is a pure admiralty and maritime claim and is to be tried to the Court and not to a jury. Moreover, LOLA MARINE's third-party complaint and amended third-party complaint, which sounds in admiralty and expressly relies on Rule 9 (h) Fed. R. Civ. P., made no demand for trial by jury. ["Trial, following the civil-law tradition with which the maritime law is closely connected, was to the judge rather than to a jury, …" Gilmore and Black, *The Law of Admiralty* (2d ed. 1975) p. 35. The Jones Act, however, expressly provides a right for a seaman to demand a jury trial on its statutory claim. See Gilmore and Black, *The Law of Admiralty* (2d ed. 1975) p. 277.] BOTTEGA's amended complaint did not set forth a claim directly against KAEMPFER and thus she has no right to a jury trial against KAEMPFER if her claim were not dismissed.
- KAEMPFER contends that the Rule 14 (c) Fed. R. Civ. P. third-party complaint tendering him directly to plaintiff is time barred since it was filed more than three years after the date of plaintiff's injuries. [46 U.S.C.S. § 30106 (2006) (formerly 46 U.S.C. § 763(a)).]

Plaintiff's Complaint and Third-Party Plaintiff's Complaint asserting Jones Act and Unseaworthiness causes of action against KAEMPFER are time barred. Jones Act and

unseaworthiness claims are governed by a three-year statute of limitations. 46 U.S.C.S. § 30106 (2006) (formerly 46 U.S.C. § 763(a)). Plaintiff was injured while serving onboard Sailing Vessel LOLA on August 18, 2001. On July 28, 2004, Plaintiff filed a complaint against Defendants LOLA MARINE, WILLIAM B. HALSTEAD, and EDGAR YACHT MANAGEMENT, INC., and subsequently amended her complaint on August 17, 2004. Plaintiff BOTTEGA's Jones Act and unseaworthiness claims expired on August 18, 2004. Nearly one year later, on August 2, 2005, after Judge Martin issued his Report and Recommendation, LOLA MARINE filed a third-party complaint, pursuant to Fed.R.Civ. P 14 (c), alleging that KAEMPFER was Plaintiff's Jones Act employer. LOLA MARINE subsequently amended the third-party complaint on January 20, 2006. A Fed.R.Civ. P 14(c) third-party action provides Plaintiff with a direct cause of action against the third-party defendant and the action proceeds against the third-party defendant as if the plaintiff had commenced an action against the third-party defendant as well as the third-party plaintiff. However, since the third-party complaint was filed on August 2, 2005, nearly one year after the expiration of the statute of limitations, the Jones Act and unseaworthiness causes of action against KAEMPFER are time-barred.

- KAEMPFER denies that he was BOTTEGA's Jones Act employer and that he was responsible for her injuries. He further contends that LOLA MARINE is estopped from denying that it was BOTTEGA's Jones Act employer.
- KAEMPFER denies that he is liable for maintenance and cure payments to BOTTEGA. He further contends that LOLA MARINE is estopped from denying its liability for the remainder of those payments which it initially made to BOTTEGA.

- If the Court rejects KAEMPFER's argument that plaintiff's direct claim against him is time barred and further rejects the defenses that plaintiff was not his borrowed servant and that LOLA MARINE is estopped from relitigating its Jones Act employer status, then KAEMPFER denies liability to plaintiff, denies that she is entitled to any compensatory damages, and asserts that any recovery must be reduced by the proportion of fault attributed to her which caused or contributed to any injury that she suffered.
- KAEMPFER denies that Captain Edgar was his "borrowed servant" or that any member of the crew of Sailing Vessel LOLA was his "borrowed servant".
- KAEMPFER denies that the Yacht Charter Agreement prepared by LOLA MARINE was a bareboat charter.
- KAEMPFER expects that the Court will find, in accordance with Magistrate Judge Martin's earlier Report and Recommendation that LOLA MARINE was the employer of the Master, Plaintiff and crew of SY LOLA and it is estopped from relitigating that issue.
- KAEMPFER expects to prove that Plaintiff's Complaint and LOLA MARINE's Third-Party Complaint asserting Jones Act and Unseaworthiness causes of action against Third-Party Defendant are time barred.
- Moreover, KAEMPFER expects to prove that he was not Plaintiff's employer on the date she was injured. Rather, LOLA MARINE was Plaintiff's employer because the parties performed as if the charter was a time charter.
- Additionally, pursuant to the Law of the Case Doctrine, LOLA MARINE is estopped from denying that it was Plaintiff's employer.

Magistrate Judge Martin correctly determined that LOLA MARINE was Plaintiff's employer on the date she was injured. Despite LOLA MARINE's argument that the parties entered into a bareboat charter, the parties conducted themselves pursuant to a time charter. Moreover, LOLA MARINE is estopped from denying that it was Plaintiff's employer pursuant to the Law of the Case Doctrine.

Under a bareboat or demise charter the owner completely and exclusively relinquishes possession, command, and navigation to the charterer. See *Brophy v. Lavigne*, 801 F.2d 521, 523 (1st Cir. 1986); see also *McAleer v. Smith*, 57 F.3d 109, 112-113 (1st Cir. 1995); *Stephenson v. Star-Kist Caribe*, Inc., 598 F.2d 676, 679 (1st Cir. 1979). Consequently, the bareboat charterer as a demise charterer is the owner *pro hac vice* of the vessel for the duration of the contract. The demise charterer is therefore responsible *in personam* for the negligence of the crew and the unseaworthiness of the vessel. *Forrester v. Ocean Marine Indem. Co.,* 11 F.3d 1213, 1215 (5th Cir. 1993). In contrast, a time or voyage charterer…, the owner does not relinquish exclusive possession and control to the time or voyage charterer, the latter is not subject to an owner's liabilities as is the demise charterer. (citations omitted). *Stephenson, supra.*

KAEMPFER and LOLA MARINE performed the charter as if it was a time charter. Accordingly, testimony will reveal that S/V LOLA was delivered to KAEMPFER fully manned and furnished. Moreover, KAEMPFER did not interview, select or hire the crew members. Most importantly, however, LOLA MARINE never relinquished possession, command, and navigation of LOLA MARINE to KAEMPFER. Testimony will reveal that KAEMPFER's decisions with respect to S/V LOLA were limited to requesting the islands he would like to visit. Captain Edgar and the crew members were charged with navigating the vessel. Additionally,

Plaintiff will testify that on the day she was injured she steered the vessel as per Captain Edgar's instructions.

Moreover, LOLA MARINE is precluded from denying that it was Plaintiff's employer on that date she was injured pursuant to the Law of the Case doctrine. That doctrine requires that legal decisions, or rulings of law, made by a court at a particular stage of a civil or criminal proceeding become "law of the case," and that thereafter these determinations govern the same issues in subsequent stages of the same litigation, unless corrected by appellate review. *Arizona v. California*, 460 U.S. 605, 618 (U.S 1983); *Ellis v. United States*, 313 F.3d 636, 646 (1st Cir. 2002). As the First Circuit has observed, the law of the case doctrine "means that a court ordinarily ought to respect and follow its own rulings, made earlier in the same case." *Ellis, supra.* This concept applies to all legal determinations made at the same level of proceedings, regardless of whether the rulings were made by a predecessor judge. *Ellis, supra.* ("The orderly functioning of the judicial process requires that judges of coordinate jurisdiction honor one another's orders and revisit them only in special circumstances."). In his Report and Recommendation, which was subsequently adopted by this Court, Judge Martin held that LOLA MARINE was estopped from denying that it was Plaintiff's employer on the date she was injured. Thus, pursuant to the Law of the Case doctrine LOLA MARINE and not KAEMPFER, was Plaintiff's employer on August 18, 2001.

LOLA MARINE is solely responsible liable to plaintiff for her injuries on board its vessel. Thomas J. Schoenbaum, *Admiralty and Marine Law* (4th Ed. 2003) § 6-23, pp 354-57 establishes:

**§ 6-23. The Jones Act Defendant**

A Jones Act lawsuit may be properly filed only against the seaman's employer.[1] The burden of proof of the employment relationship is on the plaintiff,[2] and subject matter jurisdiction does not exist if the defendant is not the seaman's employer.[3]

The existence of an employment relationship is usually fairly clear, but in doubtful cases inquiry should be made as to the following issues: (1) who had the power to engage the seaman? (2) who determined the wage to be paid? (3) who had the power of dismissal? (4) who had the right to control the seaman's on-the-job conduct?[4] The employer need not be the owner or operator of the vessel to which the seaman is assigned.[5] The defendant can even be a land-based employer.[6] In rare cases there may be more than one Jones Act employer.[7] The resolution of the issue of who is the proper Jones Act defendant is a mixed

---

[1] *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692, 1949 AMC 1909 (1949), *rehearing denied* 338 U.S. 839, 70 S.Ct. 32, 94 L.Ed. 513 (1949). See the discussion of this issue in *Corsair v. Stapp Towing Co., Inc*., 228 F.Supp.2d 795, 2003 AMC 1050 (S.D.Tex. 2002).

In *Stamoulos v. Howland Panama S.A.*, 610 F. Supp. 454, 456 (E.D.La. 1985), the court held that a husbanding agent who signs shipping articles of employment is not the Jones Act employer. The court stated: "It is axiomatic that an employer-employee relationship is essential before liability may be imposed under the Jones Act." *Spinks v. Chevron*, 507 F.2d 216, 1979 AMC 1165 (5th Cir. 1975). The Fifth Circuit in *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 1983 AMC 455 (5th Cir. 1980), set forth the proper legal standard to be applied under the Jones Act to determine whether an employer-employee relationship has been established. "A Jones Act claim also requires proof of an employment relationship either with the owner of the vessel or with some other employer who assigns the worker to a task creating a vessel connection," for "by the express terms of the Jones Act an employer-employee relationship is essential to recovery." *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224, 1979 AMC 1165 (5th Cir. 1975). The employer need not be the owner or the operator of the vessel. *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157, 1972 AMC 2659 (5th Cir. 1972). Independent contractors may be liable under the act, *Maharmas v. American Export Isbrandtsen Lines, Inc.*, 475 F.2d 165, 171, 1973 AMC 587 (2d Cir.1973); *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157, 1972 AMC 2659 (5th Cir. 1972). And a third person who borrows a worker may become his employer if the borrowing employer assumes enough control over the worker. *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969). However, even if a seaman is deemed to be a borrowed servant of one employer, this does not automatically mean that he ceases to be his immediate employer's servant for Jones Act purposes. *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224, 1979 AMC 1165 (5th Cir. 1975). And it may also be possible for a seaman to have more than one Jones Act employer. *Id.* At 225-26

There is no action in rem against the vessel under the Jones Act. *McAfoos v. Canadian Pac. S.S., Ltd.*, 243 F.2d 270 (2d Cir. 1957).

[2] *Osland v. Star Fish & Oyster Co.*, 118 F.2d 772, 1941 AMC 792 (5th Cir. 1941); *Wheatley v. Gladden*, 660 F.2d 1024, 1982 AMC 618 (4th Cir. 1981).

[3] *Evans v. United Arab Shipping Co.*, 4 F.3d 207, 1993 AMC 2705 (3d Cir. 1993); *Trentacosta v. Frontier Pacific Aircraft Industries, Inc.*, 813 F.2d 1553, 1988 AMC 45 (9th Cir. 1987).

[4] *Heath v. American Sail Training Association*, 644 F.Supp. 1459, 1988 AMC 2963 (D.R.I.1986).

[5] *Yeverton v. Mobile Laboratories, Inc.*, 608 F.Supp. 400, 405 (D.Miss. 1985), *affirmed*, 782 F.2d 555 (5th Cir. 1986); *Volyrakis v. M/V Isabelle*, 668 F.2d 1983 AMC 741 (5th Cir. 1982).

[6] *Mahramas v. American Export Isbrandtsen Lines, Inc*., 475 F.2d 165, 1973 AMC 587 (2d Cir. 1973).

[7] *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 225-26, 1979 AMC 1165 (5th Cir. 1975); *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 1983 AMC 455 (5th Cir. 1980).

question of law and fact, within the province of the jury upon instructions by the trial court. However, the Jones Act does not countenance a right of action against the master of the vessel.[8]

The issue of how is the proper defendant under the Jones Act may arise if the alleged tortfeasor is an independent contractor. In such a case the employer of the seaman may be liable if the tortfeasor was engaged in a "vital part" of the employer's operations at the time of the injury.[9]

Another theory that may be used to impose liability upon an entity other than the seaman's nominal employer is the borrowed servant doctrine. The borrowed servant doctrine holds that the courts should carefully scrutinize the employment relationships of seamen to determine who is the real employer in order that a Jones Act employer may not escape liability by delegating authority or using a third party. For example, in *Hall v. Diamond M Co.,*[10] the seaman plaintiff was an anchor handler who was employed by a subcontractor of an oil and gas drilling company. In determining that the plaintiff's true employer was the subcontractor and not the drilling company, stating as follows:

> The borrowed servant doctrine is a venerable one in maritime law, having been around since at least 1909. The purpose of the rule is to place the risk of a worker's injury on his actual rather than his nominal employer by permitting the injured worker to recover form the company that was actually

---

[8] *Kennedy v. Gulf Crews, Inc.*, 750 F.Supp. 214, 1991 AMC 1198 (W.D.La. 1990). *See also McAleer v. Smith*, 818 F.Supp. 486, 1993 AMC 2698 (D.R.I. 1993) (no general maritime law or Jones Act liability for ship's captain).

[9] *Hopson v. Texaco, Inc.*, 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966). The employer who contracts for its employees through an independent contractor, such as a manning agency, may seek to avoid liability as a Jones Act employer. In rejecting this argument, the court in *Archer v. Trans/American Services, Ltd.*, 834 F.2d 1570 (11th Cir. 1988), stated as follows:

> Federal maritime law embraces the principles of agency. *Naviera Neptuno S.A. v. All International Freight Forwarders, Inc.*, 709 F.2d F.2d 663 (11th Cir. 1983). In *Naviera*, we held the existence of an agency relationship is a question of fact. 709 F.2d at 665.
>
> * * *
>
> If the law were to recognize this contractual arrangement as something other than an agency relationship, the result would be anomalous. In this case, a cruise ship has contracted, for its entire food and beverage service, thus, completely insulating itself from any and all liability which might arise from that service. If the ship owner or operator can contract for its food and beverage service, then it may also contract for its crew members, its engineers, its maintenance, housekeeping, and hospitality staffs. The logical extension of this notion is that the ship owner or operator could contract for its entire operation. In such a manner, the ship owner or operator would escape all accountability for the ship's condition and the conduct of those working aboard. In every instance in which the ship owner or operator has historically been held accountable, an independent contractor allegedly unrelated to the ship would be the responsible party.

*Id.* At 1573.

[10] 635 F.Supp. 362 (E.D.La 1986).

directing his work. *Baker v. Raymond International, Inc.*, 656 F.2d 173, 178 (5 Cir. 1981). The rule therefore allows plaintiffs like Mr. Hall to sue a numb4er of "employers", forcing them to argue their respective culpability to the jury. Or an "employer" may argue that it borrowed the injured worker, in order to limit its liability to Workmen's Compensation. *See e.g. Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5 Cir. 1969). So, when it is available, the rule can be a valuable bargaining chip for either party in a maritime lawsuit, depending on the circumstances.

In *Ruiz v. Shell Oil*, 413 F.2d 310, 312-13 (5 Cir. 1969), the Fifth Circuit suggested nine factors to be evaluated when determining whether the borrowed employee doctrine applies, in either a Long-shoreman's Compensation case or a Jones Act case.[11] They are:

> 1) who has control over the employee and work he is performing, beyond mere suggestion of details or cooperation?
>
> 2) whose work is being performed?
>
> 3) was there an agreement, understanding or meeting of the minds between the original and the borrowed employer?
>
> 4) did the employee acquiesce in the new work situation?
>
> 5) did the original employer terminate his relationship with the employee?
>
> 6) who furnished the tools and place for performance?
>
> 7) was the new employment over a period of time?
>
> 8) who had the right to discharge the employee?
>
> 9) who had the obligation to pay the employee?

[11] *Id.* At 364-65.

> The first factor is the one to weigh most heavily in determining whether an employer has been borrowed, but no fixed test should be applied. *Ruiz,* supra, at 312; *Capps v. N.L. Baroid – NL Industries, Inc.*, 784 F.2d 615, 617 (5 Cir. 1986).

> On the other hand, in some cases even if the defendant is not the plaintiff's actual employer, there may be liability under the Jones Act based upon a finding that the worker was the borrowed servant of the defendant if there is a factual showing that the defendant had the power to control and direct the plaintiff in the performance of his work.[12]

> The issue of the proper Jones Act defendant also frequently arises in the case where the vessel is under charter. In such a case the general rule is that where the vessel owner retains command and control of the vessel and is responsible for the crew, the owner rather than a time or voyage charterer will be the Jones Act employer.[13] In the case of a demise or bareboat charter or where this charterer retains control over the crew, the charterer may be the Jones Act employer.[14]

> In addition, where a seaman is attached to a vessel owned or operated for the United States, but works for a private employer providing services to the government, his exclusive remedy may be against the United States under the Suits in Admiralty Act.[15]

The four-prong test discussed by Professor Schoenbaum, at the outset of his section quoted above, clearly demonstrates that LOLA MARINE was BOTTEGA's Jones Act employer. It was LOLA MARINE, not KAEMPFER, who had the power to:

- engage BOTTEGA,

[12] *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 1982 AMC 2752 (5th Cir. 1981); *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969).

In *Roberts v. Williams-McWilliams Co.*, 648 F.2d 255 (5th Cir. 1981), the plaintiff was employed by Gibson, a labor service company, which sent him to do welding work on a William-McWilliams barge. While working aboard the barge, the plaintiff was injured. In holding William-McWilliams liable for plaintiff's injuries under the Jones Act, the court noted: "During his work Roberts was under the complete control of Williams as no Gibson foreman was assigned to the shift on which he worked." *Id.* At 262.

A "borrowed servant" argument was rejected in *Viator v. Gordon's Trucking Co.*, 875 F.Supp. 369 1995 AMC 2408 (W.D.La. 1995). The argument was accepted *In Wolsiffer v. Atlantis Submarines, Inc.*, 848 F.Supp. 1489, 1994 AMC 1476 (D.Hawai'i 1994).

[13] *Matute v. Lloyd Bermuda Lines, Ltd.*, 931 F.2d 231, 1991 AMC 1830 (3d Cir. 1991); *Benagas v. United Brands Co.*, 663 F.Supp. 198 1989 AMC 56 (D.S.C. 1986).

[14] Copy 22; *Wheatley v. Gladden*, 660 F.2d 1024, 1026, 1982 AMC 618 (4th Cir. 1981); *Allan v. Brown & Root, Inc.* 491 F.Supp. 398, 401, 1982 AMC 689 (S.D. Tex. 1980).

[15] See § 6-11.

- determine the wages to be paid to BOTTEGA,
- dismiss BOTTEGA, and
- control BOTTEGA's on the job conduct.

Moreover, BOTTEGA was not the borrowed servant of KAEMPFER. The nine factors set forth by the Fifth Circuit in *Ruiz, supra,* demonstrate that she remained LOLA MARINE's employee. The totality of factors demonstrates that LOLA MARINE was her employer at the time of her injury. Other than a pre-printed written form, drafted by LOLA MARINE, there is no evidence that KAEMFPER had any relationship with BOTTEGA. The evidence of the parties' conduct demonstrates that they intended that she would remain in the employ of LOLA MARINE.

- KAEMPFER did not control BOTTEGA's work.
- BOTTEGA did LOLA MARINE's work.
- There was no agreement or meeting of the minds between KAEMPFER and LOLA MARINE.
- BOTTEGA's employment relationship with LOLA MARINE was neither modified nor terminated by the arrival of Mr. KAEMPFER on board LOLA.
- The vessel, its tools and appurtenances were all furnished by LOLA MARINE.
- KAEMPFER's time on board the vessel was limited to his family vacation.
- LOLA MARINE retained the right to discharge BOTTEGA.
- LOLA MARINE remained responsible for payment of BOTTEGA.

Even if the Court were to find that BOTTEGA was KAEMPFER's borrowed servant, it should determine that LOLA MARINE remains liable both under the theories of estoppel

and law of the case as well as by virtue of its power to control and direct the crewmember's performance of duty. *Baker v. Raymond Int'l Inc.*, *supra*.

Here, LOLA MARINE retained command and control of its vessel and responsibility for its crew. Thus, it retained the liability of the Jones Act employer of Ms. BOTTEGA.

## List of Witnesses

KAEMPFER expects to call the following witnesses:

- Plaintiff, Jacqueline Bottega. Fact witness. We expect Ms. Bottega to testify as to the nature of her injuries, her employment/salary history, and her medical history. Ms. Bottega will also testify as to the employment relationship with LOLA and the lack of an employment relationship with Mr. Kaempfer.

- Defendant, Lola Marine. Fact witness. Unless precluded by the Court, Lola Marine will testify as to its employment of Plaintiff and the nature of the charter agreement.

- Robert Edgar. Fact witness. Robert Edgar was the Captain of LOLA on the date Ms. Bottega was injured. We expect he will testify as to Ms. Bottega's employment and injury, as well as the parties' performance of the charter agreement.

- Brian O'Brien. Mr. O'Brien will testify as a rebuttal witness to impeach Ms. Bottega.

KAEMPFER reserves the right to name and call additional witnesses, including any witness identified by plaintiff or defendant who is not called at trial and to call a fact or expert witness to counter any fact or expert witness called by BOTTEGA and LOLA MARINE who was not identified nor produced for deposition during disclosure and discovery.

**List of Deposition Transcripts to be offered**

**JOSEPH KAEMPFER**

| PAGE | LINE |
|---|---|
| 6 | 13 |
| | 14 |
| | 16 |
| | 18 |
| 7 | 19 |
| | 20 |
| | 23 |
| 14 | 14-15 |
| | 19 |
| 15 | 1-2 |
| | 3 |
| | 4 |
| | 5 |
| | 6 |
| 16 | 1-2 |
| | 3 |
| 17 | 9-10 |
| 21 | 11-12 |
| | 13 |

| | |
|---|---|
| 23 | 3-4 |
| | 5-7 |
| | 8 |
| 24 | 13-16 |
| | 17 |
| 25 | 13-17 |
| | 19-20 |
| | 21 |
| | 22 |
| | 23-24 |
| 26 | 12-14 |
| | 15-17 |
| | 18 |
| | 19-20 |
| | 23 |
| | 24-25 |
| 27 | 1-3 |
| | 9-11 |
| | 18-20 |
| | 21 |
| | 25 |
| 28 | 1 |
| | 2-3 |

| | |
|---|---|
| | 4 |
| | 5-7 |
| | 8-10 |
| | 15-16 |
| | 17-18 |
| | 21-24 |
| 30 | 12-13 |
| | 18 |
| 31 | 8-13 |
| 32 | 5 |
| | 6-8 |
| | 9 |
| | 19-20 |
| | 21 |
| | 22 |
| | 23 |
| 32-33 | 24-1 |
| 33 | 2 |
| | 5 |
| | 15-16 |
| | 17-18 |
| | 19-23 |
| 38 | 11-12 |

| | |
|---|---|
| | 13 |
| | 14-17 |
| | 18 |
| 41 | 13-15 |
| | 16 |
| 42 | 10-13 |
| | 14 |
| | 15 |
| | 16 |
| | 17 |
| | 18-19 |
| | 20-23 |
| 43 | 7 |
| | 8 |
| | 9 |
| | 10-17 |
| | 18 |
| | 19-23 |
| 44 | 1 |
| | 8 |
| | 9-10 |
| | 11-17 |
| | 18-22 |

| | |
|---|---|
| 44-45 | 23-7 |
| 45 | 8 |
| | 9-10 |
| | 11-13 |
| | 14 |
| 46 | 14-17 |
| | 18-23 |
| 48 | 18-19 |
| | 20-21 |
| | 22-24 |
| 48-49 | 25-6 |
| 49 | 7-9 |
| | 10-11 |
| 51 | 12-17 |
| 52 | 6-8 |
| | 9-16 |
| 59-60 | 24-2 |
| 60 | 2 |
| 61 | 19-20 |
| | 21 |
| 62 | 1 |
| | 2 |
| | 3-4 |

| | |
|---|---|
| | 5 |
| | 7 |
| | 8-10 |
| | 11 |
| | 12-13 |
| | 15-16 |
| | 21-22 |
| | 23 |
| | 24-25 |
| 63 | 1 |
| | 23-24 |
| 64 | 1 |
| | 2 |
| | 4 |
| | 5-6 |
| | 7 |
| | 8 |
| | 9 |
| | 10 |
| | 11 |
| | 12 |
| | 13-16 |
| | 17-18 |

| | |
|---|---|
| | 20 |
| | 21-22 |
| | 24 |
| 65 | 4-5 |
| | 6 |
| 67 | 4-6 |
| | 10 |
| 68 | 23-25 |
| 69 | 3 |

**Deposition Page/Line References of**
***Robert Edgar***

| **Page** | **Line** |
|---|---|
| 22 | 9-11 |
| 24 | 9-15 |
| 34 | 2-7 |
| 39 | 5-6 |
| 39 | 9 |
| 50 | 16-18 |
| 50 | 19 |
| 52 | 4-5 |
| 52 | 6-8 |
| 52 | 11-12 |

| **Page** | **Line** |
|---|---|
| 52 | 13 |
| 52 | 18-19 |
| 52 | 20-21 |
| 52 | 22-23 |
| 53 | 20-21 |
| 53 | 22-23 |
| 54 | 15-16 |
| 54 | 17 |
| 55-56 | 22-5 |
| 56 | 17-20 |
| 56 | 22-23 |
| 57 | 3 |
| 57 | 6-11 |
| 57 | 12-14 |
| 57 | 15-25 |
| 58 | 2-3 |
| 58 | 8-13 |
| 58 | 17-18 |
| 58 | 19 |
| 59 | 9 |
| 59 | 10 |
| 59 | 20-21 |

| **Page** | **Line** |
| --- | --- |
| 60 | 7-9 |
| 60 | 10-11 |
| 60 | 12 |
| 61 | 4-6 |
| 61 | 4-18 |
| 65 | 4-6 |
| 69 | 23-25 |
| 70 | 1-10 |
| 70 | 21-24 |
| 71 | 24-25 |
| 72 | 1-2 |
| 72 | 4-7 |
| 72 | 16-18 |
| 72 | 20-22 |
| 73 | 4-9 |
| 73 | 11-12 |
| 73 | 15-16 |
| 74 | 1-7 |
| 74 | 10-21 |
| 74-75 | 23-4 |
| 75 | 7-9 |
| 75 | 15 |

| **Page** | **Line** |
|---|---|
| 75 | 17-23 |
| 76 | 1-7 |
| 76 | 9-25 |
| 78 | 1-7 |
| 78 | 9-17 |
| 78 | 20-25 |
| 79 | 8-15 |
| 79 | 24-25 |
| 80 | 2-5 |
| 80 | 9-16 |
| 80 | 19-20 |
| 81 | 10-18 |
| 84 | 4-5 |
| 84 | 13-15 |
| 84-85 | 25-2 |
| 85 | 20-23 |
| 87 | 4 |
| 87 | 15-16 |
| 88 | 6-22 |
| 89 | 14-21 |
| 89 | 24-25 |
| 91 | 3-9 |

| **Page** | **Line** |
|---|---|
| 91-92 | 24-1 |
| 92 | 6-14 |
| 93 | 1-11 |
| 93 | 13-16 |
| 94 | 9-11 |
| 95-96 | 24-4 |
| 96 | 7-9 |
| 97-98 | 24-19 |
| 98-99 | 23-1 |
| 100 | 19-24 |
| 101 | 5-10 |
| 102 | 2-6 |
| 103 | 2-9 |
| 103 | 19-21 |
| 103 | 24 |
| 104 | 8-18 |
| 104 | 22 |
| 105 | 2-3 |
| 105 | 6 |
| 106 | 3-10 |
| 108 | 10-14 |
| 108 | 16-25 |

| **Page** | **Line** |
|---|---|
| 109 | 6-8 |
| 109 | 11 |
| 109-110 | 25-2 |
| 110 | 14-16 |
| 111-112 | 20-14 |
| 113-114 | 20-4 |
| 115 | 9-13 |
| 115 | 15-18 |
| 120 | 19-23 |
| 121 | 23-24 |
| 122 | 12-18 |
| 123 | 6-21 |
| 124 | 1 |
| 124 | 8-11 |
| 124 | 13 |
| 124 | 13 |
| 124 | 23-24 |
| 125-126 | 22-17 |
| 127 | 4-6 |
| 128 | 5-7 |
| 129 | 17-21 |
| 131 | 9-12 |

| **Page** | **Line** |
|---|---|
| 131 | 16-23 |
| 132 | 3-4 |
| 132 | 6-8 |
| 133 | 12-14 |
| 133 | 20-23 |
| 134 | 17-20 |
| 136 | 4-7 |
| 136 | 11-15 |
| 136 | 17-20 |
| 136 | 25 |
| 137 | 1-2 |
| 138 | 9-12 |
| 140 | 7-9 |
| 140-141 | 21-3 |
| 145 | 3-4 |
| 145 | 17-25 |
| 146 | 1 |
| 146 | 15-20 |
| 146 | 23 |
| 148 | 10-18 |
| 149 | 9 |
| 150 | 1-2 |

| **Page** | **Line** |
|---|---|
| 150 | 11-19 |
| 150 | 23-24 |
| 151 | 1 |
| 152 | 6 |
| 152 | 8-9 |
| 152 | 11-13 |
| 152 | 15-17 |
| 152 | 18 |
| 153 | 2-25 |
| 154 | 1-24 |
| 155 | 5-6 |
| 156 | 23-25 |
| 157 | 1-4 |

**Deposition Transcript of**
**Plaintiff, JACQUELINE BOTTEGA**

- Page 17, lines 14-25
- Page 18, lines 1-22
- Page 21, lines 4-25
- Page 22, lines 5-13
- Page 23, lines 4-22
- Page 24, lines 4-13
- Page 27, lines 17-25

- Page 28, line 1
- Page 29, lines 7-17
- Page 30, lines 7-23
- Page 32, lines 8-9
- Page 33, lines 18-21
- Page 34, lines 15-22
- Page 35, lines 5-7
- Page 39, lines 5-21
- Page 40, lines 1-11
- Page 43, lines 8-23
- Page 45, lines 6-18
- Page 46, lines 24-25
- Page 47, lines 1-2
- Page 55 13-25
- Page 56, lines 1-25
- Page 57, lines 1-9
- Page 59, lines 9-15
- Page 60, lines 2-10
- Page 61, lines 6-18
- Page 64, lines 1-5
- Page 67, lines 8-12
- Page 68, line 25

- Page 69, line 1-2
- Page 72, lines 21-23
- Page 73, lines 1-25
- Page 74, lines 3-25
- Page 75, lines 1-5
- Page 80, lines 4-8
- Page 81, lines 8-9
- Page 83, lines 2-21
- Page 84, lines 3-24
- Page 85, lines 4-23
- Page 86, lines 1-5
- Page 89, lines 3-24
- Page 90, line 1
- Page 91, lines 2-25
- Page 92, lines 8-9
- Page 93, lines 6-25
- Page 94, lines 1-8
- Page 98, lines 11-15
- Page 100, lines 9-13
- Page 103, lines 3-6
- Page 116, lines 9-16
- Page 117, 16-24
- Page 118, lines 9-23

- Page 121, lines 13-25
- Page 122, lines 1-5
- Page 125, lines 10-25
- Page 126, lines 1-21
- Page 127, lines 1-3
- Page 128, lines 1-2
- Page 129, lines 1-8
- Page 130, lines 1-25
- Page 131 lines 1-25
- Page 132, lines 1-2
- Page 136, lines 13-23
- Page 137, lines 5-15
- Page 142, lines 15-23
- Page 143, lines 1-4
- Page 144, lines 2-22
- Page 145, lines 7-14
- Page 146, lines 17-19
- Page 149, lines 12-15
- Page 150, lines 19-25
- Page 151, lines 1-21
- Page 152, lines 14-25
- Page 153, line 25
- Page 154, lines 6-14

- Page 155, lines 23-25
- Page 156, lines 1-2
- Page 161, lines 18-23
- Page 162, lines 7-24
- Page 164, lines 7-25
- Page 165, lines 14-21
- Page 166, lines 5-11
- Page 169, lines 11-16
- Page 170, lines 10-12
- Page 172, lines 4-9
- Page 173, lines 3-12
- Page 175, lines 20-22
- Page 176, lines 5-14
- Page 178, lines 16-25
- Page 179, lines 1-14
- Page 180, lines 5-24
- Page 182, lines 12-20
- Page 185, lines 7-23
- Page 186, lines 1-25
- Page 187, lines 6-7
- Page 188, lines 13-18
- Page 193, lines 1-3

**List of Exhibits**

KAEMPFER expects to offer the following exhibits:

Kaempfer Exhibit A is the Report and Recommendation of Magistrate Judge Martin *Bottega v. Halstead*, 2005 U.S. Dist. LEXIS 16627, *2 (D.R.I. 2005).

Kaempfer Exhibit B is a copy of Plaintiff's Complaint.

Kaempfer Exhibit C is a copy of Plaintiff's Amended Complaint.

Kaempfer Exhibit D is Edgar's Deposition Transcript, pages and lines designated *supra*.

Kaempfer Exhibit E is Bottega's Deposition Transcript, pages and lines designated *supra*.

Kaempfer Exhibit F is Kaempfer's Deposition Transcript, pages and lines designated *supra*.

Kaempfer Exhibit G is a copy of the Yacht Charter Party Agreement.

Kaempfer Exhibit H is a copy of the Yacht Employment Agreement.

Kaempfer Exhibit I is a copy of LOLA's Third-Party Complaint.

Kaempfer Exhibit J is LOLA MARINE's amended Third-Party Complaint dated January 20, 2006. (Doc. #57).

Kaempfer Exhibit K is plaintiff's Medical Records. [The parties have stipulated to the admissibility of these records.]

Kaempfer Exhibit L (formerly marked as Edgar 1-9) contains photographs of LOLA.

Kaempfer Exhibit M is Plaintiff's medical treatment record from Maine Hospital where she was treated initially. [The parties have stipulated to the admissibility of these records.]

# Jury Charges

To the extent that the Court determines, contrary to KAEMPFER's position, that plaintiff is entitled to a trial by jury against him, he respectfully requests the Court charge the jury substantially as follows:

**Jones Act**

In order to prevail on her claim under the Jones Act, Plaintiff JACQUELINE BOTTEGA must establish each of the following things by a fair preponderance of the credible evidence:

First, that at the time of her injury she was acting in the course of her employment as a seaman employed by Defendant LOLA MARINE, LTD.

Second, that Defendant LOLA MARINE, LTD. was negligent; and

Third, that Defendant LOLA MARINE, LTD.'s negligence was a legal cause of the injury sustained by Plaintiff JACQUELINE BOTTEGA.

To be a "seaman," Plaintiff JACQUELINE BOTTEGA must have been a worker whose duties contributed to the function of a vessel or to the accomplishment of its mission; and, in addition, must have had a connection to a vessel in navigation—a connection that was substantial in terms of both its duration and its nature. The Jones Act is intended to protect sea-based maritime workers who owe their allegiance to a vessel and are regularly exposed to the perils of the sea. The Jones Act is not intended to protect land-based employees. The phrase "vessel in navigation" means any boat, ship, barge or other thing used primarily for the transportation of cargo, equipment or persons across navigable waters. The phrase "vessel in navigation" also includes anything that was actually in navigation at the time of Plaintiff JACQUELINE BOTTEGA's injury, even though its primary purpose was not navigation or commerce across navigable waters.

"Negligence" is the failure to use reasonable care. Reasonable care is that degree of care that a reasonably careful person or corporation would use under similar circumstances to prevent reasonably foreseeable harm. To find negligence, you must find that harm was reasonably foreseeable. Negligence may consist either in doing something that a reasonably careful person or corporation would not do under similar circumstances, or in failing to do something that a reasonably careful person or corporation would do under similar circumstances. The fact that an accident may have happened does not alone permit you to infer that it was caused by negligence; the employer does not guarantee a seaman 's safety.

For purposes of a Jones Act claim, negligence is a "legal" cause of injury if it plays any part, no matter how small, in bringing about or actually causing the injury. So, if you should find from the evidence that negligence of Defendant LOLA MARINE, LTD. contributed in any way toward any injury suffered by Plaintiff JACQUELINE BOTTEGA, then Plaintiff's injury was legally caused by Defendant LOLA MARINE, LTD's negligence. Negligence may be a legal cause of injury even though it operates in combination with the act of another, some natural cause, or some other cause.

If a fair preponderance of the evidence does not support Plaintiff's claim that Defendant LOLA MARINE, LTD's negligence legally caused her injury, then your verdict will be for Defendant LOLA MARINE, LTD. If, however, a preponderance of the evidence does support Plaintiff's claim, you will then consider the defense raised by Defendant LOLA MARINE, LTD.

Defendant and third-party Defendant contend that Plaintiff was herself negligent and that such negligence was a legal cause of her injury. This is a defensive claim and the burden of

proving this claim is upon Defendant LOLA MARINE, LTD. and KAEMPFER who must establish by a fair preponderance of the credible evidence:

First, that Plaintiff was also negligent; and

Second, that Plaintiff's negligence was a legal cause of her injury.

I have already defined "negligence" and "legal cause" and the same definitions apply here.

If you find in favor of Defendant LOLA MARINE, LTD. and KAEMPFER on this defense, that will not prevent recovery by Plaintiff. It only reduces the amount of Plaintiff's recovery. In other words, if you find that the accident was due partly to the fault of Plaintiff that her own negligence was, for example, 50% responsible for her injury-then you will fill in that percentage as your finding on the special verdict form I will explain in a moment. I will then reduce Plaintiff's total damages by the percentage that you insert. Of course, by using the number 50% as an example, I do not mean to suggest to you any specific figure. If you find that Plaintiff was negligent, you might find any amount from 1% to 99%.

**Pre-existing Condition**

If you find for plaintiff, you should compensate plaintiff for any aggravation of an existing disease or physical defect *[or activation of any such latent condition]*, resulting from such injury. If you find that there was such an aggravation, you should determine, if you can, what portion of plaintiff dislocated shoulder condition resulted from the aggravation and make allowance in your verdict only for the aggravation. However, if you cannot make that determination or if it cannot be said that plaintiff's dislocated shoulder condition would have existed apart from the injury, you should consider and make allowance in your verdict for the entire condition.

**Damages**

I am now going to instruct you on damages in the event you should reach that issue. The fact that I instruct you on damages does not indicate any view by me that you should or should not find for Plaintiff on liability.

Plaintiff JACQUELINE BOTTEGA bears the burden of proof to show both the existence and the amount of her damages by a preponderance of the evidence. But this does not mean that she must prove the precise amount of her damages to a mathematical certainty. What it means is that she must satisfy you as to the amount of damages that is fair, just and reasonable under all the circumstances. Damages must not be enlarged so as to constitute either a gift or a windfall to Plaintiff or a punishment or penalty to defendant. The only purpose of damages is to award reasonable compensation. You must not award speculative damages, that is, damages for future losses that, although they may be possible, are wholly remote or conjectural. If you should award damages, they will not be subject to federal or state income taxes, and you should herefore not consider such taxes in determining the amount of damages.

It is the duty of one who is injured to exercise reasonable care to reduce or mitigate the damages resulting from the injury-in other words, to take such steps as are reasonable and prudent to alleviate the injury or to seek out or take advantage of a business or employment opportunity that was reasonably available to her under all the circumstances shown by the evidence. On this issue of mitigation the burden of proof is on defendant to show by a preponderance of the evidence that Plaintiff has failed to mitigate damages. You shall not award any damages to Plaintiff that you find she could reasonably have avoided.

If you find that Plaintiff had a pre-existing condition that made her more susceptible to injury than a person in good health, Defendant is responsible for the injuries suffered by Plaintiff as a result of Defendant's negligence even if those injuries are greater than a person in good health would have suffered under the same circumstances. Defendant is not liable for Plaintiff's pain or impairment caused by a pre-existing condition. But if you find that Defendant negligently caused further injury or aggravation to a pre-existing condition, Plaintiff is entitled to compensation for that further injury or aggravation. If you cannot separate the pain or disability caused by the pre-existing condition from that caused by Defendant's negligence, then Defendant is liable for all Plaintiff's injuries.

The elements of damage may include:

1. Reasonable Medical Expenses. The parties have stipulated that reasonable medical expenses amount to $____________.

2. Lost Wages and Earning Power. You may award Plaintiff a sum to compensate her for income that she has lost, plus a sum to compensate her for any loss of earning power that you find from the evidence she will probably suffer in the future, as a result of Defendant's negligence.

In determining the amount of future loss, you should compare what Plaintiff's health, physical ability and earning power were before the accident with what they are now; the nature and severity of her injuries; the expected duration of her injuries; and the extent to which her condition may improve or deteriorate in the future. The objective is to determine the injuries'

effect, if any, on future earning capacity, and the present value of any loss of future earning power that you find Plaintiff will probably suffer in the future. In that connection, you should consider Plaintiff's work life expectancy, taking into account her occupation, her habits, her past health record, her state of health at the time of the accident and her employment history. Work life expectancy is that period of time that you expect Plaintiff would have continued to work, given her age, health, occupation and education.

If you should find that the evidence establishes a reasonable likelihood of a loss of future earnings, you will then have to reduce this amount, whatever it may be, to its present worth. The reason for this is that a sum of money that is received today is worth more than the same money paid out in installments over a period of time since a lump sum today, such as any amount you might award in your verdict, can be invested and earn interest in the years ahead.

3. Pain and Suffering and Mental Anguish. You may award a sum to compensate Plaintiff reasonably for any pain, suffering, mental anguish and loss of enjoyment of life that you find Defendant's negligence has caused her to suffer and will probably cause her to suffer in the future. Even though it is obviously difficult to establish a standard of measurement for these damages, that difficulty is not grounds for denying a recovery on this element of damages. You must, therefore, make the best and most reasonable estimate you can, not from a personal point of view, but from a fair and impartial point of view, attempting to come to a conclusion that will be fair and just to all of the parties.

**Credibility of the Witness**

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is “knowingly” done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

**Length of Trial**

Defendant KAEMPFER expects a four day trial.

Dated: February 20 , 2007
Newport, Rhode Island

Respectfully submitted,

By: ______________________

/s/ Francis J. Flanagan, Esq.
Sayer, Regan, Thayer & Flanagan
Attorneys for Third-Party Defendant
J.W. KAEMPFER
130 Bellevue Avenue
Newport, Rhode Island 02840
Telephone : (401) 849-3040
Facsimile : (401) 849-4330

Lawrence B. Brennan
Christine A. Civitano
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
150 East 42nd Street
New York, New York 10017-5639
Telephone: (212) 490-3000
Facsimile: (212)490-3038

## CERTIFICATE OF SERVICE

I, Francis J. Flanagan, hereby certify that I filed the *THIRD-PARTY DEFENDANT's PRETRIAL STATEMENT* in accordance with the Court's ECF system, which will send notification of the filing to the following:

Frederick A. Lovejoy
LOVEJOY & ASSOCIATES
Attorneys for Defendant and
Third-Party Plaintiff
LOLA MARINE, LTD.
1536 Westminster Street
Providence, Rhode Island 02909
(401) 273-7747

Justin T. Shay
Charles S. Beal
CAMERON & MITTLEMAN, LLP
Attorneys for Plaintiff
JACQUELINE BOTTEGA
56 Exchange Terrace
Providence, RI 02903
(401)331-5700

Gregory D. Bellantone
EDLEMAN, KRASIN & JAYE, PLLC
Attorneys for Plaintiff
JACQUELINE BOTTEGA
One Old County Road
Suite 210
Carle Place, New York 11814
(516)742-9200

Norman A. Peloquin, II, Esq.
SAUNDERS & SAUNDERS
Attorneys for Defendant
EDGAR YACHT MANAGEMENT, INC.
700 Pleasant Street
New Bedford, MA 02740
(508) 999-5400

/s/ Francis J. Flanagan

Dated: February 20, 2007