# Exhibit A

08/31/04 TUE 16:11 FAX 910 762 3132 HEDRICK 017
2004/AUG/13/FRI 06:28 PM NICHOLSON NEWPORT FAX NO. 4016835016

L I T T L E H A R B O R

CREWED YACHT CHARTERS DIVISION

TELS: 800/225-7973 – 401/683-7000 – Fax: 401/683-7029

# ~ YACHT CHARTER AGREEMENT ~

*Yacht Name:* LOLA *Type:* Aux Sail *LOA:* 78' *Flag:* USA *Doc #:* 671170

*Max # Guests Aboard: Overnight:* 6 *Day Cruising:* 12 *Number in Crew:* Capt. + 2

**Between the Undersigned Parties, it has been Agreed as follows:**

*Date of Contract:* July 6, 2001

*Owner's Name & Address:*

Lola Marine of Newport Rhode Island, USA

*Charterer's Name & Address:*

J.W. Kaempfer of London, England

*From: Time:* 1200 *Hours* *Date:* Friday, 10 August, 2001

*To: Time:* 1200 *Hours* *Date:* Monday, 20 August, 2001

*Boarding Port:* Vinal Haven, Maine *Disembark:* Vinal Haven, Maine

## ~ Terms & Fees ~

| | | |
|---|---|---|
| *Terms:* 10 Days @ Base Rate plus all expenses: | Base Rate (US): | $ 27,140 |
| *Deposit Due:* 50% of rate -- Paid by wire 6-18-01 | | $ 13,570 |
| *Balance of Rate Due:* | | $ 13,570 |
| *Plus APA (Advanced Provisioning/Expense Allowance)* | | $ 3,000 |
| TOTAL CHARTER FUNDS DUE: | By 10 July, 2001 | $ 16,570 |

DEFENDANT'S EXHIBIT 13 Edgar 10/20/06

One Little Harbor Landing ▪ Portsmouth, Rhode Island 02871
Phone 401-683-7000 ▪ Fax 401-683-7029 ▪ Website: WWW.LHYB.COM

CUSTOM YACHTS | YACHT BROKERS | MARINE SERVICES

08/13/04 FRI 17:21 [TX/RX NO 7542]

00017

## WITNESSETH:

*1. DELIVERY:*

The Owner agrees to deliver the yacht in full commission and in proper working order, outfitted as a yacht of her size, type and accommodations, with full equipment, inclusive of that required by law, and fully furnished, including galley, dining utensils, bed and bath linens; staunch, clean and in good condition throughout and ready for service; and agrees to allow demurrage pro rata to the Charterer for any delay in delivery.

But should it be impossible for the Owner to make delivery as stipulated through causes beyond his control and should such a delivery not be made within 24 hours thereafter, then this Agreement may be canceled by the Charterer and in such event, any charter money paid in advance shall be refunded to him without further liability to the Owner.

*2. INSURANCE:*

The owner represents that the yacht is insured against fire, marine and collision risks and with protection and indemnity coverage for the term of this charter, as follows subject to such deductibles, if any, as are specified below in US Dollars:

Hull: $ 1,500,000 P&I: $ 2,000,000 Deductible: $ 11,250

Said policies of insurance are to be held by the Owner. But should the Owner fail to, or elect not to carry such insurance, he shall assume the same responsibility as if the yacht were so insured.

The Owner's insurance policy does not cover the Charterer's protection and indemnity during the term of the charter. **Charterer may purchase additional Charterer's Legal Liability insurance at his own expense.**

Additional CLL insurance: *Recommended* Charterer Initial: ______

*3. ACCIDENTS:*

The Owner agrees that should the yacht after delivery sustain breakdown of machinery, or be disabled, or be damaged by fire, grounding, collision, or other cause, so as to prevent the use of the yacht by the Charterer for a period of not less than 24 consecutive hours at any time, the same not being brought about by any act or default of the Charterer, the Owner shall make a pro rata return of hire to the Charterer for such period in excess of the said 24 hours that the yacht shall be disabled or unfit for use.

*4. RUNNING EXPENSES:*

The Charterer agrees to accept the yacht delivered as hereinbefore provided, and **to pay all running** expenses during the term of the charter.

*5. LIENS*

The Charterer, his agents and employees have no right or power to permit or suffer the creation of any maritime liens against the yacht, except for crew's wages and salvage. The Charterer agrees to indemnify the Owner for any charges or losses in connection therewith, including reasonable attorney's fees.

*6. DRUG RESTRICTION:*

Use or possession of illegal drugs, including marijuana, on board the vessel shall result in immediate termination of the charter with forfeiture of all monies paid.

*7. RE-DELIVERY & INDEMNIFICATION:*

The Charterer agrees to deliver the yacht, her equipment and furnishings, free and clear of any indebtedness incurred for the Charterer's account, at the expiration of this charter, to the Owner, at the agreed port, in as good condition as when delivery was taken, excepting ordinary wear and tear, and any loss or damage for which the Owner is covered by his own insurance, or the Charterer by his own insurance (if any), as set forth in Paragraphs 2 and 7 of this Agreement.

*8. NAVIGATION LIMITS:*

The Charterer agrees to restrict the cruising of the yacht to the navigational limits as set forth in the yacht's insurance policy.

*9. RESTRICTED USE:*

The Charterer agree that the vessel will be employed exclusively as a pleasure vessel for the sole and proper use of himself, his family, his guests and servants, during the term of this charter, and shall not transport merchandise, or carry passengers for pay, or engage in any trade, nor in any way violate the Revenue Laws of the United States, or of any other Government within the jurisdiction of which the yacht may be at any time, and shall comply with the law in all other respects.

*10. NON-ASSIGNMENT:*

The Charterer agrees not to assign this Agreement or sub-charter the yacht without the consent of the Owner in writing.

*11. CHARTERER'S AUTHORITY OVER CREW:*

It is mutually agreed that the full authority regarding the operation and management of the yacht is hereby transferred to the Charterer for the term thereof. In the event, however, that the Charterer wishes to utilize the services of a captain and/or crew members in connection with the operation and management of the yacht, whether said captain and/or crew members are furnished by the Owner, or by the Charterer, it is agreed that said captain and/or crew members are agents and employees of the Charterer and not the Owner.

In the event that local United States Coast Guard, or other regulations, require the Owner exclusively to provide a captain and/or crew, or the Owner agrees to provide a captain and/or crew, they must be competent not only in coastwise piloting, but in deep sea navigation. The captain shall in no way be the agent of the Owner, except that he shall handle clearance and the normal running of the yacht, subject to ports to be called at, and the general course of the voyage; but the captain will be responsible for the safe navigation of the yacht, and the Charterer shall abide by his judgment as to sailing, weather, anchorages and other pertinent matters.

The charter hire includes the services of a properly uniformed crew for the charter period, who will be selected by the Charterer, with the approval of the Owner or the Owner's Agent. Charterer is aware he has a choice of captains. After due consideration, he is hiring the Captain listed on the Yacht Employment Agreement, and will provide additional crew as outlined in same Agreement. Charterer has full right to terminate captain or crew, as they are his employees. However, replacements shall be hired as per Paragraph 11 of this Agreement.

*12. DEFAULTS:*

It is mutually agreed that should any installment of charter money not be paid on the date designated in this Agreement, the Owner shall have the right to resume possession of the yacht and terminate this charter, without prejudice to his rights in respect of any arrears of charter money, or of any breach by the Charterer of the conditions contained herein.

*13. BROKERAGE FEES:*

The Owner and the Charterer recognize **Little Harbor Yacht Brokers** as the sole broker in connection with this Agreement, and the Owner agrees to pay said broker the mutually agreed brokerage fees in connection with said charter, including any extensions, renewals, subsequent charters, and/or in connection with the subsequent purchase of the yacht by the Charterer within a period of two years from the date of this Agreement.

It is further agreed by the Owner and the Charterer that once this Agreement has been signed by both parties, and a deposit of the charter fee has been paid, the said broker shall have no further obligation or responsibility in connection herewith to either party.

*14. CHARTERER'S CERTIFICATION:*

The Charterer (if he is to operate the yacht himself) certifies that he is experienced and competent in the handling and operation of a yacht of the type and size named in this Agreement, and that he has a sufficient practical knowledge of seamanship, piloting and Rules-of-the-Road. He agrees that he will not allow the yacht to be operated by any person not so qualified during the term of the charter.

*15. ADDITIONAL CONDITIONS:*

The parties further agree hereto that if Charterer must cancel, all monies will be forfeited unless the yacht is rebooked for the original dates reserved as per this Agreement. Refunds will be in full, or prorated according to dates rebooked, less a cancellation fee due the broker of 15% of the charter amount.

If the Owner must cancel, monies paid shall be refunded in full by the Owner to the Charterer. It is further agreed that in such an event, the Owner shall pay the broker the commission due on the full charter fee.

*16. CHARTERER'S RIGHT TO SURVEY:*

If the Charterer desires, he may request a survey of the yacht upon delivery to him, and again upon re-delivery to the Owner, and it is agreed that any such survey shall be at the Charterer's expense. However, this provision may be waived.

Charterer wishes to waive the right of survey. Charterer Initial

*17. ARBITRATION:*

Any controversy or claims arising out of, or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, said arbitration to be held in the City and State of the Owner's residence, unless another place is mutually agreed upon. Judgment upon and award reached by the Arbitrator(s) may be entered in any court of said state having jurisdiction.

*18. FURTHER AGREEMENTS:*

*It is further agreed that:*

(1) Signed facsimile copies of this contract, transmitted between the parties, are binding.
(2) There shall be no smoking below deck.
(3) There shall be no pets allowed aboard the yacht.
(4) Gratuity shall be at the Charterer's discretion.
Other:

To the true and faithful performances of the foregoing Agreement, the said parties hereto bind themselves, their heirs, executors, administrators and assigns, each to the other.

**IN WITNESS WHEREOF**, the parties hereto set their hands:

**CHARTERER:**

| | | | |
|---|---|---|---|
| J.W. Kaempfer | 7-6-01 Date | Witness | 7-6-01 Date |

**OWNER:**

| | | | |
|---|---|---|---|
| for Lola Marine, Ltd. | 7/n /01 Date | Witness | 7/19/01 Date |

### ACKNOWLEDGMENT

*When the Charterer boards the yacht, the Captain will read him the following statement with another crewman present as a witness:*

This is a bareboat charter and under the terms of a bareboat charter, you are responsible and have full and exclusive possession, command, management and operation of the vessel, as if you owned it, except that the final decision as to the safe navigation is my responsibility.

You are my Employer(s) for the term of the charter.

Charterer(s): J.W. Kaempfer 7-6-01 Date

Captain: Robert Edgar

# Exhibit B

# YACHT EMPLOYMENT AGREEMENT

AGREEMENT made this 6 day of July, 2001, by and betw[een] of London. England, Charterer of the Yacht LOLA, hereinafter ..., hereinafter called the Capt[ain] Edgar of ________________

ORIGINAL

~ WITNESSETH ~

WHEREAS, the Charterer has under agreement the Yacht LOLA, pursuant to this bareboat agreement, wherein it is the Employer's obligation to furnish the said yacht with a competent master and crew and,

WHEREAS, the Captain is a competent yacht master, having had experience in coastal and inland waters of New England, Maine & the Atlantic Ocean and will furnish two (2) crew for the management and navigation of the said yacht and,

WHEREAS, the parties desire to reduce their agreement to written terms, therefore, in consideration of the premises and of the agreements hereinafter contained, it is agreed as follows:

1. Employer hereby hires Captain Robert Edgar as the Master of the said yacht, to act as such Master so long as the yacht is under charter to Employer.

2. Yacht captain shall be properly uniformed and the crew shall comprise of the following: Captain: Robert Edgar Chef: ________________ Mate/Stew: ________________

3. Yacht Captain shall be paid for his services and the services of his crew, as per this agreement and Employer shall furnish the Yacht Captain, accommodations aboard and food during the term of this agreement. Captain's wages are included in the gross charter fee quotes in the attached agreement. Crew gratuity is *not included* in the gross charter fee quoted on the attached agreement and is at the sole discretion of the Employer.

4. The terms of this agreement shall commence and terminate at the time and date pursuant to the attached Yacht Charter Agreement, unless sooner terminated by the Yacht Charter Agreement for any reason. In the event that the Yacht Charter Agreement is sooner terminated, the Captain will receive a pro-rated share of the agreed compensation for his services.

IT WITNESS WHEREOF, the parties have duly executed this agreement on the day indicated next to their respective signatures.

| | | |
|---|---|---|
| [signature] Employer J.W. Kaempfer | 7-6-01 Date | [signature] Witness |
| [signature] Captain Robert Edgar | 7/6/01 Date | [signature] Witness |

DEFENDANT'S EXHIBIT Kaempfer 5 1/23/07

KAEM0000000042